STATE of Missouri, Respondent,

v.

Raynard DAVISON, Appellant.

No. 61545.

Supreme Court of Missouri, Division No. I.

July 15, 1980.

Paul L. Dobberstein, Jr., St. Louis, for appellant.

Kathleen Mills, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from convictions on two counts of first degree murder, § 559.007, RSMo 1975 Supp., for which appellant was sentenced to concurrent terms of life imprisonment.

Raynard Davison was charged with the deaths of Marie Simms and Arthur "A. W." Isbell which occurred on January 16, 1976. Simms, age 70, and Isbell, age 53, lived together in Simms' flat at 5104 Dr. Martin Luther King Drive in St. Louis.

Oscar Reed, who was 10 years old at the time of the crime, Reed's five-year-old brother, Lenny, and 10-year-old Charles Smith were headed toward the Reeds' grandfather's flat on an errand at approximately 6:00 P.M. on January 16, 1976. The grandfather's flat was in the same building as Simms'. As Oscar led the boys up the stairs, he noticed the front door of the Simms' flat partially open. He looked inside and saw one black male stabbing Simms and at least three black males inside the flat. As he was looking into the Simms' flat, a black male came to the door and Oscar saw his face for approximately 12 seconds. The man at the door then ran with the other men toward the back of the flat.

Oscar, along with Smith and Lenny, ran next door to Larry's Lounge and told his mother what he had seen. Mrs. Reed and another customer at the tavern went to the Simms' flat where they found the door open and saw Simms and Isbell on the living room floor in a pool of blood. Mrs. Reed called the police.

When the police arrived they found the bodies in the living room, the bedrooms ransacked and the back door open. Simms and Isbell were pronounced dead on arrival at a hospital. Autopsies revealed both died as a result of fracturing of the skull, with cuts and blows to the head, neck and chest.

Appellant was arrested on January 19, 1976. On January 20, 1976, he appeared in a lineup which was viewed by Oscar Reed and Charles Smith. Oscar Reed identified the appellant as the man who came to the front door of Simms' flat.

Davison and Charles Lewis were indicted for first degree murder in the perpetration of a robbery in the deaths of Simms and Isbell. Davison's separate trial resulted in a verdict of guilty of murder in the first degree on each of the two counts. Lewis' separate trial resulted in conviction of two counts of murder in the second degree with consecutive 50-year sentences. See *State v. Lewis*, 579 S.W.2d 745 (Mo.App.1979).

A combination of questionable defense strategy and excessive prosecutorial zeal in this case gives rise to a vexing problem which forms the basis for appellant's first point of error.

At the trial, Oscar Reed did not directly identify appellant as one of the men he saw in the Simms' flat. He testified that he picked the man he saw at the door at a lineup and pointed out the man he saw as the third man in a four-man lineup. A photograph of the lineup was placed in evidence. Sergeant Young of the St. Louis Police Department testified that he conducted the lineup and that appellant was the third person in the photograph, the person pointed out by Reed.

On cross-examination of Young, defense counsel asked:

"How many people that you talked to identified the third man on that picture, on the picture of the lineup?"

The officer replied, "Two" and defense counsel asked who the second person was. The officer stated that Charles Lewis was one of the two. He said he thought Oscar Reed was the second.

Upon redirect examination of the officer, the prosecutor, over strenuous objection of

defense counsel, was permitted to adduce from the officer that Charles Lewis was an adult and that he had been charged with murder in the deaths of Isbell and Ms. Simms. The prosecutor's theory was that defense counsel's questioning opened up Lewis' identification of appellant and that if some explanation as to who Lewis was was not forthcoming, defense counsel would be able to argue that the officer said two persons identified appellant and the state had not produced the second person. In the redirect examination by the prosecutor, the officer, in response to leading questions, said that Charles Lewis was in one lineup and that appellant was in a second lineup and that " * * * it was this lineup of Raynard Davison that * * * two people identified Raynard Davison," Lewis being one of the two persons.

The only evidence offered by the defendant was the testimony of the court reporter who read excerpts from the transcript made by her at a trial in April, 1977, involving a man by the name of Charles Lewis. Upon the mention of that name the prosecutor offered the unsolicited stipulation that "Charles Lewis is the same Charles Lewis we have been referring to here before." Apparently the testimony was intended to impeach Reed's testimony by showing that his testimony at Lewis' trial varied from that in the present case. However, insofar as the transcript here shows, the witness whose testimony in Lewis was read to the jury was never identified. On cross-examination, the prosecutor brought out that the Lewis trial involved the death of Marie Simms and Arthur Isbell.

On the appellant's motion for new trial, the state, in effect, stipulated that the testimony that Lewis picked Davison out of the lineup was incorrect and that Reed was the only person who made an identification at the lineup.

In his closing argument to the jury, counsel for defendant stated:

"Now, where do we start? Obviously we have to start with Oscar Reed. Oscar Reed is the star witness here. Oscar is the only witness who got up on that stand and said that this man, number three man in the photograph that was identified as the defendant—and there is no question it is the defendant, we don't dispute that—he said he is the man that he saw looking out the door."

In rebuttal, the prosecutor stated:

"Remember Sergeant Young when he testified. Mr. Dobberstein said, 'Let me ask you this, Sergeant: How many people identified the defendant out of that lineup?' What did the sergeant say?

"MR. DOBBERSTEIN (defense counsel): Objection, Your Honor.

"MR. FREDERICKS (Prosecutor): (Continuing) Two."

Defense counsel objected that such matter was not proper rebuttal because it had not been brought out in the state's opening argument or referred to by defense counsel. The trial court agreed and sustained the objection.

The prosecutor continued:

"Counsel for defendant said only one person identified him. He said we're basing this thing on the identification of one person. Did you hear him say that in his argument? Well, did you hear Sergeant Young say in answer to his question—"

In a conference at the bench the prosecutor's position was that prohibition against raising in final argument matters not previously mentioned applied only to punishment. He also stated that defense counsel had argued that only one man identified appellant and Sergeant Young said there were two. Defense counsel corrected the prosecutor's paraphrasing of his argument, pointing out that he said that Reed was the only person who took the stand and identified appellant. The trial court sustained the objection, ruling that the argument was not proper rebuttal.

"MR. FREDERICKS: (Continuing) You recall Sergeant Young's testimony. Now, we're going to have to leave it to you. It's just been ruled that I can't recall Sergeant Young's testimony to you. So I'm going to have to leave it to you.

"MR. DOBBERSTEIN: Your Honor, I object to that comment to the jury and ask it be stricken.

"THE COURT: I'll sustain the objection. * * *

"MR. FREDERICKS: (Continuing) But you remember Sergeant Young's testimony. Remember the cross-examination by Mr. Dobberstein. Remember the name of Charles Lewis.

"MR. DOBBERSTEIN: Your Honor, again, he's going over the same thing.

"MR. FREDERICKS: (Continuing) What name was in the transcript?

"THE COURT: You're going to have to stay away from that. I've already ruled on that. Please don't go into that. I ruled that portion is not proper rebuttal argument.

"MR. FREDERICKS: (Continuing) Mr. Dobberstein argued—He brought Mrs. Bassler in here. She had a transcript. That transcript was in the trial of Charles Lewis, and that transcript was from a trial that was had some eight or ten months ago in a trial of Charles Lewis involving the death of Marie Simms and involving the death of A. W., Arthur Isbell. And Sergeant Young told you that this fellow Charles Lewis was in a lineup.

*     *     *     *     *     *

"MR. FREDERICKS: (Continuing) Sergeant Young told you that three Negro persons told him they had looked in that door. And Sergeant Young told you about who identified this defendant in a lineup, and Sergeant Young told you that one of them was Oscar Reed. And when Sergeant Harris came out to testify, I asked Sergeant Harris, I said, 'Did Charles Smith, the one they called Gates, look at this man in a lineup?' And he said, 'Yes.' And I said, 'Did Charles, Gates, identify him?' And he said, 'No.' I said, 'Did Oscar Reed identify him?' He said, 'Yes.'

"Now, if I can't go over the testimony of Sergeant Young at this time, you recall his testimony.

"MR. DOBBERSTEIN: Your Honor, again I'm going to object.

"MR. FREDERICKS: (Continuing) You recall as best you can.

"MR. DOBBERSTEIN: I ask the remarks be stricken stating he cannot go over the testimony.

"THE COURT: All right. I'll sustain that objection. You can go over certain parts of his testimony. I've just ruled as to what you can't go over and I think it's clear.

*     *     *     *     *     *

"MR. FREDERICKS: (Continuing) I want you to remember as best you can, and this is very, very, very important, all of the testimony of Sergeant Young. That was the good looking, black sergeant who took the stand toward the end of the trial.

*     *     *     *     *     *

"MR. FREDERICKS: (Continuing) * * * I want you to remember the testimony of Sergeant Young and everything he's testified to pertaining to the identification of this man in the lineup and by whom, and you won't forget that. You won't forget that any more than you'll forget the fact that you were in this trial here this year or this day or this hour, because there isn't any question in anybody's mind that this man here, Raynard Davison, was standing at that door and I tell you under the testimony and under God he was there, he was one of the men who was there and he is guilty of murder in the first degree of Arthur Isbell and Marie Simms.

"And whether Sergeant Young is good looking or not, you know the one I'm referring to, the one who had the blue shirt on and the stripes. Remember what he told you. Remember when Mr. Dobberstein cross-examined him and he asked him about who identified whom. Ask yourselves if you remember that.

"MR. DOBBERSTEIN: Again, I object. He's going back over and over again on the same thing. I ask these remarks be stricken from the record and I ask the Court declare a mistrial.

*     *     *     *     *     *

"THE COURT: All right. I'm going to sustain the objection. I'm going to instruct the jury to disregard it. If you go into it one more time, I'm going to seriously consider declaring a mistrial in this matter. I'm sick and tired of you trying to cover the thing I just told you you couldn't cover in rebuttal argument. The question for the record really is whether you covered it or sought to disobey my ruling. But I warn you, if you go into it one more time in any way—I'm not saying you have gone into it specifically, you may have done it by inference. If you go into it one more time, I'm going to give serious consideration to declaring a mistrial.

\* \* \* \* \* \*

"THE COURT: \* \* \* I'll sustain Mr. Dobberstein's last objection, and Mr. Fredericks has sought to go into matters three and four times that I've already ruled he's not to go into. So those remarks will be stricken. The jury is instructed to disregard them about that last business about what he was saying Sergeant Young."

In this Court, appellant's assignment of error is directed to the failure of the trial court to grant a mistrial because of the prosecutor's disregard of the trial court's limitation of the prosecutor's final argument. However, this record presents a much more fundamental question which cannot be ignored, the right of the defendant to a fair trial.

Concededly, the testimony of Young that Lewis had identified appellant was produced by a question of defense counsel. When the state started to exploit the answer, defense counsel, in a bench conference, stated that the answer surprised him and that he had no intention to pursue the matter further or to make use of the answer in argument. The trial court, however, permitted the prosecutor to identify Lewis as a codefendant and thereby effectively got over to the jury that a codefendant had identified appellant, evidence which the state certainly could not have adduced directly other than by the codefendant's testimony.

Then, in final argument, the prosecutor, ignoring repeated rulings of the trial court, placed major emphasis upon Young's testimony, testimony which the state was later to admit was at least in part erroneous. Defense counsel in his argument had pointed out the numerous inconsistencies in young Reed's version of what he had observed. Thus, as stated by the prosecutor, the testimony of Young became, in the language of the prosecutor "\* \* \* very, very, very important \* \* \*," so much that the prosecutor was willing to risk a possible mistrial in order to bring it to the jury's attention despite the trial court's ruling that it was not a proper subject of rebuttal argument.

■ The trial court's ruling was at least arguably correct inasmuch as the rule involved requires the prosecutor, in his opening argument to "\* \* \* disclose not only his position on punishment but also all other points essential for conviction in time to allow the defendant opportunity to reply." *State v. Tolliver*, 562 S.W.2d 714, 720[14, 15] (Mo.App.1978). The prosecutor in his opening argument relied upon Reed's testimony. When the defense counsel attacked Reed's credibility, the prosecutor sought to respond with the Lewis identification, not previously referred to by either party on closing argument.

■ The prosecutor was not at liberty to continue to argue according to his erroneous understanding of the rule applied by the court. He was obliged to abide by the court's ruling but he defiantly refused to do so. Ordinarily, as argued by respondent, the court's admonition to the jury to disregard improper argument will be deemed to cure its prejudicial effect. That rule necessarily assumes that the improper argument is abandoned upon the court's ruling. Obviously continued repetition of the argument, as in this case, is intended to impress the improper remarks upon the jury and necessarily diminishes the impact of the court's admonition to disregard the argument.

■ Given the highly prejudicial nature of the fact of identification by a codefend-

ant, the manner in which the issue was injected into the case, the fact that the testimony on the subject was, at least in part, erroneous and the prosecutor's stubborn insistence upon arguing the subject despite the trial court's rulings, it must be concluded that defendant was denied his right to a fair trial. See *State v. Pastushin*, 568 P.2d 504, 506[2]–[4] (Haw.1977).

Appellant's second point must be disposed of. . He contends that no submissible case was made against him because the evidence at the most showed only his presence at the scene of the crime and "possibly" flight. He argues that mere presence at the scene of a crime and flight therefrom is insufficient to support a conviction, citing *State v. Arnold*, 566 S.W.2d 185 (Mo. banc 1978), and *State v. Castaldi*, 386 S.W. 392 (Mo.1965). He invokes *State v. Johnson*, 586 S.W.2d 816 (Mo.App.1979), as requiring proof of "affirmative participation" in addition to presence at the scene and flight.

 As noted in *State v. Simmons*, 494 S.W.2d 302, 305[5] (Mo.1973), "one's 'presence' may have substantially different meanings and raise wholly different inferences under differing circumstances." In *Arnold* and *Johnson*, there were circumstances, in addition to presence, which were sufficient to support the charge against the defendant. With some liberal imagination, it may be concluded that Castaldi merely happened upon the scene where a motor vehicle was being cut up with an acetylene torch in a remote location and that his departure with an active participant upon their discovery was occasioned by a lack of other means of transportation. That situation is far different from the case of one who is in another's living quarters, in whose presence the residents are brutally beaten and stabbed while a third person ransacks the premises, yet who displays no effort to assist the victims or to deter their active assailant and who departs the scene through the rear of the premises with the observed active participants rather than by way of the immediately accessible front door. In these circumstances, such person's presence will permit the inference that he

was acting in concert with the observed active participants in the crime.

Reversed and remanded.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.