STATE of Missouri,
Plaintiff-Respondent,

v.

Andrew D. LIGHT, Defendant-Appellant.

No. 12100.

Missouri Court of Appeals,
Southern District,
Division Three.

June 23, 1982.

J. D. Rohrer, Woodward, Rohrer & Mazzei, P. C., Steelville, for defendant-appellant.

John Ashcroft, Atty. Gen., Brian P. Seltzer, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

In a one-count information filed in the Circuit Court of Crawford County, defendant Andrew Light was charged with second-degree burglary and burglarious stealing as denounced by § 560.110, RSMo 1969, now repealed. A jury found defendant guilty of both offenses. Defendant's punishment was assessed at 7 years imprisonment for burglary and 5 years imprisonment for burglarious stealing. Timely motions for new trial and other relief were filed. The trial court granted a new trial upon the charge of burglarious stealing but denied the motion addressed to the charge of burglary. Judgment was entered and sentence was pronounced upon the verdict finding defendant guilty of second-degree burglary. Defendant appealed.

The opinion of this court was that no final judgment within the intent of Mo.R. Crim.P. 30.01(a) had been entered and the appeal was premature. It was therefore ordered that the appeal be retained upon the docket conditionally to permit the State to dispose of the charge of burglarious stealing, either by entry of a nolle prosequi or by retrial. An opinion was filed. Thereafter, at the State's suggestion, the court ordered the record supplemented. As supplemented, the record shows that after the appeal was submitted, the charge of burglarious stealing was retried and defendant was acquitted. The opinion filed was withdrawn. The appeal is before us upon the merits.

■ The State is entitled to the most favorable view of the facts in evidence and the reasonable inferences to be drawn therefrom. *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1977), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). So taken and considered, the record shows that on September 7, 1978, defendant, Dean Martin and Terral Wilkinson lived at a dog kennel near Rolla. Martin and Wilkinson had been told that Alfred Spurgeon, who lived near Cuba, owned "a bunch of saddles and some stuff"; thereafter the three men decided to burglarize the Spurgeon house. Martin took Wilkinson to the Spurgeon residence to show him "where it was at." Martin also obtained the prospective victim's telephone number.

Early in the morning on September 7, Martin, the defendant and Wilkinson met at the kennel. Defendant and Wilkinson were instructed to call the Spurgeon residence to see if anyone was there. If there was no one at home, Wilkinson and the defendant were to steal firearms, saddles and tack and then proceed to Rutledge, Missouri, with the stolen goods. Martin would meet them there.

Defendant and Wilkinson drove east from the kennel to a service station near Cuba. Wilkinson called the Spurgeon telephone number and "let it ring ten or twelve times . . ., you know, [which meant] there wasn't nobody there." The two men then drove north to the Spurgeon residence and found it unoccupied. Defendant, in Wilkinson's words, "went up and knocked on the door to see if there was anybody there and there wasn't nobody there, and [defendant] opened up the door and went in and I went in too." Defendant and Wilkinson took 10 firearms from the house, ransacked the barn and put the stolen goods in defendant's pickup. The pickup had been fitted with a camper shell, but defendant and Wilkinson piled hay on their spoil so the pickup would "just look like a load of hay going down the road."

Wilkinson then drove the pickup to a prearranged place of rendezvous near Lancaster, in Scotland County. The stolen goods were sold and the proceeds were divided.

The sufficiency of the evidence has not been questioned, but we have borne in mind that the elements of second-degree burglary as defined by § 560.045, RSMo 1969, now repealed, were breaking and entering into a dwelling house with the intent to commit a felony or to steal therein. Opening a door which had been shut constituted a forcible breaking within the meaning of that statute. *State v. Bradley*, 485 S.W.2d 408, 412 (Mo.1972); *State v. Cox*, 527 S.W.2d 448, 452 (Mo.App.1975). The evidence is manifestly sufficient to support the verdict.

Further, if there is lingering confusion, a defendant could be found guilty of burglary but not guilty of burglarious stealing under former § 560.110, *State v. Parker*, 535 S.W.2d 126, 127 (Mo.App.1976), even though he could not be convicted of burglarious stealing without a finding of burglary. *State v. Cline*, 447 S.W.2d 538, 540 (Mo. banc 1969).

Defendant's first point is that the trial court prejudicially abused its discretion by limiting his cross-examination of witness Terral Wilkinson. Wilkinson was the State's principal fact witness. Counsel advised the court that upon cross-examination, he intended to impeach Wilkinson by asking Wilkinson if he had committed other crimes. The trial court then called a conference out of the hearing of the jury. The case law was discussed. Wilkinson's appointed counsel was called and was given an opportunity to consult with his client. Apparently, Wilkinson's counsel decided not to invoke his client's privilege against self-incrimination.

Thereafter, defendant was permitted to show that Wilkinson had: 1) lied under oath in connection with another criminal proceeding; 2) had stolen two cows and three calves in Crawford County after the burglary on trial was committed; 3) had burglarized another residence in Crawford County, and 4) had made a tentative plea bargain with the prosecuting attorney's office. Counsel was not permitted to ask Wilkinson if he had "jumped bond" in connection with the cattle theft.

Counsel now cites us to *State v. Foster*, 349 S.W.2d 922 (Mo.1961), and argues that because he was not permitted to ask Wilkinson if he "jumped bond," his cross-examination was prejudicially restricted. In our view, the jury undoubtedly understood that witness Wilkinson was an admitted felon turned informer, and might be a mendacious witness. The controlling rule is that when, as here, the inquiries relate to wholly collateral matters, the latitude of cross-examination is for the most part in the trial court's discretion. *State v. Messley*, 366 S.W.2d 390, 393 (Mo.1963); *State v. Winn*, 324 S.W.2d 637, 642–643[6] (Mo.1959). We find no abuse of discretion.

Light's defense was alibi. Several members of his family testified he was indeed elsewhere when the burglary was committed. Defendant's wife testified that the defendant, his brother and his uncle were at home working on a truck during the day on September 7, 1978. Mrs. Light also testified that at the time in question, she was employed at "the hospital." In rebuttal, the State called the personnel director of the Phelps County Memorial Hospital, Mr. Gray. Gray was permitted to identify a time card which indicated Mrs. Light was working at the hospital from 6:46 a.m. to 3:08 p.m. on September 7, 1978. Defendant asserts the State did not qualify this document as a business record under § 490.680, RSMo 1978.

It is true that Mr. Gray was not the custodian of the time card, but counsel overstates the record when he says that Gray had no knowledge of the method by which it was prepared. Gray was able to explain the various entries on the card, and he testified that the time-keeping system was "set up by computer, so I'm familiar with the method [of keeping records]." There was a showing of the identity, the mode and time of preparation of the card and that it was made in the regular course of business. The qualifying evidence was sufficient to invoke the trial court's discretion to admit the time card as a business record. See *Rossomanno v. Laclede Cab Company*, 328 S.W.2d 677, 683[13][14] (Mo. banc 1959). Section 490.680 vests considerable discretion in the trial court in passing upon the admissibility of documents as business records. *State v. Boyington*, 544 S.W.2d 300, 305–306[12, 13] (Mo.App.1976). We find no abuse of that discretion here. In this connection, defendant makes a further point that Mrs. Light should have been permitted to testify how the time card might have been "punched" when she was not present. Mrs. Light was permitted to testify she did not "punch" the time card, and in our view, the other questions simply invited speculation.

■ Finally, we should note that the case was taken on the original briefs. In his original brief, counsel assigned error to the giving of Instruction No. 6, which submitted the charge of burglarious stealing. Instruction No. 6 is MAI–CR 7.34, modified to hypothesize defendant's guilt as a coparticipant. Paragraph Second of the instruction, as given upon the first trial, omitted the words "with the intent permanently to deprive [Spurgeon] of" and was therefore incomplete and misleading. Apparently, the trial court granted a new trial because of the error in Instruction No. 6. In any event, there is no challenge to Instruction No. 5, which submitted second-degree burglary, and any error in Instruction No. 6 is wholly irrelevant on this appeal.

We find no error substantially affecting the merits of the cause and the judgment is accordingly affirmed.

BILLINGS, P. J., and TITUS and PREWITT, JJ., concur.