STATE of Missouri,
Plaintiff-Respondent,

v.

Michael CANNADY,
Defendant-Appellant.

No. 43689.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 25, 1983.

ting testimony describing how drug users use phenmetrazine and (3) in failing to declare a mistrial after the prosecuting attorney made inflammatory and prejudicial statements and referred to matters unsupported by the evidence during the closing argument. We affirm.

On appeal from a criminal conviction, the State is entitled to the most favorable view of the facts in evidence and reasonable inferences therefrom. *State v. Light,* 636 S.W.2d 157, 158 (Mo.App.1982).

Detectives Swan and Holifield of the St. Louis Police Department approached Glenda Schmeid to purchase "Preludin." Schmeid and the two detectives attempted to locate defendant. They saw defendant running on a street in the City of St. Louis. Schmeid left the detectives, approached defendant, and purchased twelve pills with money provided by the detectives. Schmeid put the pills in her mouth, returned to the detectives and spit the twelve wet orange-coated pills into Swan's hand. Although the detectives did not hear the dialogue between Schmeid and the defendant, they each observed the transfer of money, saw defendant pull a vial from his pants pocket and exchange something with Schmeid, and saw Schmeid put her hand to her mouth.

Later that day, the detectives packaged the pills and delivered them to the St. Louis Police Department laboratory. Mr. Joseph Crowe, a criminalist, tested the pills at the laboratory the following day to determine their chemical content. He conducted visual observations of the pills and scientifically evaluated their contents with the aid of a gas chromatograph-mass spectrometer (GCMS). Crowe concluded that the pills delivered to the detectives contained phenmetrazine. His testimony that the pills contained phenmetrazine was the sole evidence establishing the chemical contents of the pills.

In defendant's first point, relating to the admission of experimental and opinion evidence, he claims that the State failed to lay a proper foundation for admission of Crowe's experimental and opinion evidence,

Charles W. Bobinette, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, for plaintiff-respondent.

MELVYN W. WIESMAN, Special Judge.

Defendant was convicted of Illegal Distribution and Delivery of Phenmetrazine, a controlled substance, and was sentenced to a term of ten years imprisonment. On appeal, he argues that the trial court erred: (1) in admitting into evidence experimental and opinion evidence that the pills in question contained phenmetrazine; (2) in admit-

the State failed to prove that the pills were in the same condition when tested as when taken from defendant, the State failed to prove that the GCMS instrument used in testing the pills was reliable and properly functioning at the time of the tests and Crowe's interpretation of the test results and opinion that the pills contained phenmetrazine was based on incompetent, unverified assumptions and hearsay evidence. He has failed to preserve any of these claimed errors for review.

■ Defendant never made an objection at trial that the State failed to prove that the pills were in the same condition when tested as when taken from defendant. Furthermore, Crowe testified that he observed the pills, compared them with information from the Physician's Desk Reference and determined that pills of that type usually contained phenmetrazine. Defendant raised no objection to this testimony. Next, Crowe described his method of testing the pills, using the GCMS, as follows:

A. [Crowe] I set the instrument up so that if Phenmetrazine was present the instrument would indicàte that it was there. I then took one of the pills and broke it open and it contained a white center, which is the way the pill is manufactured. Knowing that the controlled substance, if there was one present, would be in the white center and not the pink coating, I took part of the white center, placed it in the test tube along with methynol.
MR. MARTIN: [Defense counsel] I'm sorry?
A. Methynol. And then aggitated the liquid and the white solid on the grounds that part of the controlled substance, if it was present, would be in the liquid. I then injected one microliter of liquid into the GCMS, the instrument, then it printed out a mass spec of what was in that tablet and it gave ten drugs that were the closest match to what was in the liquid. I then compared the mass spec of the unknown with the mass spec of a standard that was run of the first match that the computer gave us, and they were

the same. This indicated to me that the white center did in fact contain Phenmetrazine.
MR. MARTIN: Judge, may my objection be noted subject to cross?
THE COURT: Sure.
Q. Do you have what the results of those tests are again?
A. That—
MR. MARTIN: Same objection continues, Your Honor, subject to cross, rather than seeking voir dire at this time.
THE COURT: Very well.
A. That the tablets that I check contained Phenmetrazine.

Mr. Crowe concluded, stating that in his opinion, the tablets contained Phenmetrazine.

During defense counsel's extensive cross-examination, Crowe testified to the running and testing of the GCMS instrument. He concluded that it was not the GCMS that interpreted the results of the testing and reached the conclusion that the unknown substance was phenmetrazine, but, rather, he interpreted the test results and used that information in reaching his opinion. At the conclusion of cross-examination, defense counsel moved to strike Crowe's testimony identifying the substance as phenmetrazine. The motion was denied.

■ To preserve error, an objection must be made with sufficient specificity to advise the trial court of the ground or reason for excluding evidence. *State v. Lang,* 515 S.W.2d 507, 511 (Mo.1974). A general objection preserves nothing for review, *State v. Hastings,* 477 S.W.2d 108, 111 (Mo. 1972), and ordinarily constitutes no objection at all. *State v. Wintjen,* 500 S.W.2d 39, 43 (Mo.App.1973). Defendant's statements, objecting "subject to cross," do not call attention of the court to the ground or reason for the objection. Defendant's objection for "lack of foundation, subject to my cross," likewise, is not sufficiently specific to alert the trial court to the grounds for excluding the evidence. *See State v. Roberts,* 622 S.W.2d 226, 227 (Mo.App.1981); *State v. Vineyard,* 497 S.W.2d 821, 829 (Mo.

App.1973). It, therefore, is inadequate to preserve the matter for review. *Pazdernik v. Decker,* 652 S.W.2d 319, 321 (Mo.App. 1983).

■ Although defendant's motion to strike Crowe's testimony at the conclusion of cross-examination was more specific, a specific objection to evidence made after the evidence has been introduced comes too late. *State v. Brown,* 604 S.W.2d 10, 14–15 (Mo.App.1980). An adequate specific objection must be made at the earliest possible opportunity in the progress of the trial. *State v. Simmons,* 500 S.W.2d 325, 328 (Mo. App.1973).

It is clear from the record that defendant made no specific objection to Crowe's opinion testimony that the substance in the pills was phenmetrazine. Further, defendant failed to make a specific, timely objection to the foundation for admission of the evidence, the condition of the pills, or the reliable and properly functioning of the GCMS at the time of the tests. "One cannot sit by and gamble on the outcome and, if he loses the gamble, then, for the first time make a tergiversating objection. If he chooses to gamble he must abide his wager." *State v. Rideeoutte,* 572 S.W.2d 877, 879–80 (Mo.App.1978), citing *Brown v. Thomas,* 316 S.W.2d 234 (Mo.App.1958). *See also State v. Harvey,* 625 S.W.2d 198, 200 (Mo.App.1981). Where defendant, as a matter of trial tactic, chooses to make a general objection "subject to cross," he fails to preserve the error for appellate review, even if he later makes a more specific objection after conclusion of his cross-examination.

■ Further, the grounds for exclusion of the evidence stated in defendant's motion to strike were not the same as those stated in the motion for new trial and on appeal. In the motion to strike, defendant objected, not to the scientific foundation as to the reliability of the machine itself (a ground asserted here), but to the reliability of the GCMS used in conjunction with computer libraries prepared by unknown sources. A point on appeal must be based upon the theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made. *State v. Lenza,* 582 S.W.2d 703, 710 (Mo. App.1979); *State v. Peterson,* 545 S.W.2d 717, 719 (Mo.App.1977); *State v. Kerr,* 531 S.W.2d 536, 542 (Mo.App.1975).

■ Since Crowe's testimony was the only evidence that the pills contained phenmetrazine, we review defendant's arguments concerning Crowe's opinion evidence and reliability of the GCMS at the time of the test under the plain error rule. Rule 29.12(b). Before a court applies the plain error rule, there must be a sound, substantial manifestation and a strong, clear showing that injustice or a miscarriage of justice will result otherwise. *State v. Caffey,* 457 S.W.2d 657, 660 (Mo.1970); *State v. Wendell,* 542 S.W.2d 339, 343 (Mo.App.1976). We find no manifest injustice or miscarriage of justice from the admission of Crowe's testimony.

Defendant argues that the State must prove that the instrument used in testing was reliable and properly functioning at the time the tests were conducted citing *City of St. Louis v. Boecker,* 370 S.W.2d 731 (Mo. App.1963) and *State v. Johnson,* 539 S.W.2d 493 (Mo.App.1976), and has suggested that such proof is lacking in this case. Although the State has admitted in its brief that "Mr. Crowe did not affirmatively establish that the GCMS was working properly," an examination of the whole record reveals there is evidence to establish a prima facie case of accuracy and reliability. During direct and cross-examination of Crowe the following facts were elicited: (1) The GCMS instrument has an internal standard and every morning they run what the makers of the instrument call an "auto tune" to determine if the machine is operating within the company's specifications as working correctly. (2) He runs blank tests with methynol on occasion and usually between drugs if he believes they were tests of the same drug and he has never had a blank test show positive results for anything. (Two separate tests were performed on two separate pills in the present case). (3) Crowe has a familiarity with the way the GCMS func-

tions. (4) The GCMS has a computer that prints out the name of the drugs that closest match the unknown substance believed tested as a result of a search of the computer library within the instrument. It is not this comparison which forms the basis for the expert's opinion. (5) The graph printed by the instrument for the unknown substance is compared with a graph kept in a book in the St. Louis Police Department laboratory which was prepared by a chemist of the laboratory of a known phenmetrazine sample purchased by the department from a reliable pharmaceutical company, although the identity of that chemist was not known to Crowe. In addition to the foregoing facts, there was no evidence that the tests described by Crowe were not performed, and there was no evidence which would indicate that the GCMS was not functioning properly at the time the tests were conducted. Also, no issue was raised relative to the acceptability within the scientific community of the GCMS testing for this particular substance, to the ability of this particular instrument to perform the test when properly functioning, or to the qualification of Crowe to perform the test or interpret the test results. The chain of custody of the seized pills was admitted by defendant.

The situation in the present case is totally dissimilar to that which exists in radar cases, such as *Boecker.* The GCMS does not measure motion and there is nothing to indicate that movement of the GCMS will affect its accuracy and functioning. To the contrary, radar speed meters must be checked for accuracy each time they are set up for use since proper functioning is easily affected by movement. *City of St. Louis v. Boecker,* 370 S.W.2d at 736. *See also State v. Means,* 628 S.W.2d 426, 429 (Mo.App. 1982); *State v. Johnson,* 539 S.W.2d at 504. Crowe's testimony concerning the results of the GCMS testing differs from radar testing in another significant way. In radar cases the radar operator can testify only to what speed the meter indicates whereas, in the present cause, the criminalist uses his own knowledge of science with the aid of the GCMS to reach a conclusion as to the

nature of the unknown substance. *See State v. Means,* 628 S.W.2d at 429. A criminalist, qualified to use a GCMS, therefore, is in a unique position to evaluate test results produced by the GCMS and to reject them from consideration in reaching his expert opinion when they are inconsistent with the proper functioning of the instrument. Crowe observed the GCMS test results and had to interpret those results in order to form his opinion. There was no evidence that the usual procedures for determining accuracy were not followed. Nor was there evidence that the test results were inconsistent with a proper functioning of the GCMS.

Defendant's reliance on *State v. Johnson,* is also ill founded. In that case, involving neutron activation analysis, the court found that the evidence sustained a prima facie case of accuracy and reliability, noting the testimony of the expert regarding the measures taken to insure that the instruments involved were in proper working order and further noting that there was no evidence to the contrary. *State v. Johnson,* 539 S.W.2d at 504. The evidentiary base for submission to the jury of the test results of the GCMS in this cause is consistent with that established in *Johnson.* There was, therefore, no plain error in the admission of testimony concerning the GCMS, although it would have been preferable if the State had affirmatively established more detail relative to the functioning of the GCMS on the day of the testing.

The defendant next argues that Crowe's opinion and interpretation of the test results were based on incompetent assumptions and hearsay evidence. Crowe's cross-examination revealed that the GCMS printout of the drugs that closest match the tested substance is a result of a search of the computer library within the machine. Crowe did not know who compiled that library. The graph from the GCMS was also compared with a library of graphs created by the St. Louis Police Department laboratory as a result of testing of known substances. That library included a known substance of phenmetrazine purchased by

the police department from a reliable pharmaceutical company. That library was created by a chemist in the department laboratory, although Crowe did not know which one.

▇▇▇ Admission of expert testimony rests within the sound discretion of the trial court. *State v. Andrade,* 534 S.W.2d 595, 597 (Mo.App.1976). Although the known standard against which Crowe compared the GCMS printout was prepared by others, defendant raised no timely objection to the hearsay nature of the known sample. When hearsay evidence is admitted without objection, it is in the case for all purposes and may be given its natural and logical probative effect by the trier of facts. *State v. Day,* 531 S.W.2d 780, 782 (Mo.App.1975). Moreover, any question as to reliability of tests used by a chemist cannot be considered on appeal when the tests were not challenged by the defendant in the trial court. *State v. Pernell,* 606 S.W.2d 389, 392 (Mo.App.1979).

▇▇▇ The record reflects an adequate factual basis for Crowe's expert opinion. An opinion by a qualified expert is evidence and it is the province of the jury to hear and weigh all evidence, including opinion evidence, and decide the issues. *State v. Vineyard,* 497 S.W.2d at 829. We find no manifest injustice or miscarriage of justice resulting from admission of the state's experimental and opinion evidence.

▇▇▇ Defendant next claims that the trial court erred in allowing a detective to describe how a drug user injects phenmetrazine into his veins. Defendant admits that he has failed to preserve this issue for review and requests review under the plain error rule. Reviewing the record, that evidence was relevant to establish that the controlled substance was contained inside the orange coating and not affected by Schmeid's saliva. We, therefore, find no error in the trial court's discretionary admission of such testimony.

▇▇▇ Finally, defendant claims that the prosecutor made improper statements during the closing argument that were inflammatory, prejudicial, and not supported by the record. Defendant has failed to preserve these arguments for review. Ordinarily, alleged errors on closing arguments do not justify relief under the plain error rule unless they are determined to have a decisive effect on the jury. *State v. Murphy,* 592 S.W.2d 727, 732 (Mo.banc 1979); *State v. Davis,* 566 S.W.2d 437, 446–7 (Mo. banc 1978). We find that no manifest injustice or miscarriage of justice resulted from the prosecutor's comments.

Defendant claims that plain error resulted during the prosecutor's discussion of Glenda Schmeid's credibility. As the State's key witness, she had prior convictions and was testifying against defendant as a result of a plea agreement with the State. She had spent the night prior to her testimony in a motel, under police protection. She had been a prostitute, drug user, and drug supplier, and her credibility was a major issue at trial. Schmeid had further testified before a grand jury as part of the plea agreement, and defense counsel cross-examined her about that testimony, attempting to show discrepancies between her grand jury testimony and her trial testimony.

The prosecutor argued:

How does she [Schmeid] know him [defendant] so well? She's pushing drugs. I'll admit that to you. She's a former addict. She's not in St. Louis anymore. Because she can't live in St. Louis. Because if she did she'd get her head blown off.

The court properly sustained defendant's objection and, at defendant's request, the jury was instructed to disregard the statement. Defendant made no other immediate request for further relief. After further closing argument by the prosecutor, defendant's motion for a mistrial on the grounds that the state implied that defendant had threatened Schmeid's life was denied.

▇▇▇ Clearly, it is improper for the state to argue matters not in evidence. *State v. White,* 440 S.W.2d 457, 460 (Mo.1969); *State v. Connell,* 523 S.W.2d 132, 137 (Mo.

App.1975). Although there was evidence that Schmeid no longer lived in the St. Louis area, there was no evidence that she had to leave the area or that anyone had threatened her with physical harm.

Not every instance in which the prosecution exceeds the limits of proper argument requires a mistrial or reversal. Such excesses not only must be improper but they also must have been prejudicial to the defendant under the facts and circumstances of the particular case. Ordinarily, the court's admonition to the jury to disregard improper argument will be deemed to cure its prejudicial effect, *State v. Dees,* 631 S.W.2d 912, 918 (Mo.App.1982), unless the prosecutor, thereafter, fails to abandon the improper argument. *State v. Davison,* 601 S.W.2d 623, 627 (Mo.1980). In determining whether an improper argument was so clearly injurious that a new trial should be required, this court considers whether the trial court gave a cautionary instruction, whether the trial court gave a curative type instruction to disregard the improper comment and the strength of the State's case. *State v. Price,* 541 S.W.2d 777, 779 (Mo.App. 1976).

In the present case the trial court gave a cautionary instruction, MAI–CR 2.68, sustained the objection raised by the defendant and directed the jury to disregard the improper comment. Defendant's motion for a mistrial later in the closing argument was untimely. The prosecution did not persist in its argument and abandoned it during the balance of closing argument. Weighing the prosecutor's statement against the entire record to determine the prejudicial effect, *State v. Reed,* 629 S.W.2d 424, 428 (Mo.App.1981), we find the evidence of defendant's guilt was strong and direct. We, therefore, find no manifest injustice or miscarriage of justice has resulted from the prosecutor's improper argument.

Defendant failed to object to a remark made by the prosecutor during the State's rebuttal closing argument, when referring to the grand jury testimony, that, "I wish all the testimony was on—in front of you.

I really do." Defendant claims that the argument suggested that the State had undisclosed knowledge of facts pointing to defendant's guilt which if disclosed would prove that defendant was a drug supplier. We disagree.

A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy arguments, will draw that meaning from among other abundant, less damaging interpretations. *State v. Connell,* 523 S.W.2d at 138. The prosecutor may have intended, and the jury may just as easily have perceived, the argument as a reminder that the portion of Schmeid's grand jury testimony with which defendant sought to impeach her was not her entire grand jury testimony and that the jury should consider that fact when evaluating the effect of those inconsistencies upon the credibility of her total testimony. In addition, defendant questioned Schmeid extensively about her grand jury testimony and argued discrepancies during his closing argument. The prosecutor can retaliate to an issue raised in defendant's closing argument, even though it might otherwise be improper. *State v. Hill,* 628 S.W.2d 361, 362 (Mo.App.1981). We find no plain error in that portion of the State's argument.

Defendant claims that the cumulative effect of the State's improper argument resulted in manifest injustice, depriving him of a fair trial. We find this argument to be without merit. The judgment is affirmed.

KAROHL, P.J., and WILLIAM E. TURNAGE and DONALD MANFORD, Special Judges, concur.