**STATE of Missouri, Plaintiff–Respondent,**

v.

**Charles James KING, Defendant–Appellant.**

**No. 15178.**

Missouri Court of Appeals, Southern District, Division One.

Feb. 22, 1988.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Lew Kollias, Columbia, for defendant-appellant.

GREENE, Presiding Judge.

After jury trial, Charles James King was convicted of second degree robbery, and sentenced to 10 years' imprisonment as punishment for the crime.

On appeal, King alleges the trial court abused its discretion in failing to sustain King's challenges for cause of veniremen Collier and Bye. We agree, and reverse and remand.

The information charging King with second degree robbery alleged that King, on July 3, 1986, in violation of § 558.030, RSMo 1978, "forcibly stole lawful currency of the United States in the charge of Fay Croney and owned by Sikeston General Oil Company." Fay Croney was the cashier of a service station-convenience store called the U–Pump–It, which was owned by the Sikeston General Oil Company.

One of the state's witnesses listed on the information was Detective Dan Armour of the Sikeston Department of Public Safety.

At trial, and during voir dire of the jury panel, veniremen David G. Collier, III and William "Bill" Bye indicated they knew Detective Armour. During questioning of Bye by defense counsel, the following questions were asked, and answers given:

MR. GAUSNELL [defense counsel]: A few of the other people said they knew Dan Armour. William Bye, how do you know Dan?

VENIREMAN BYE: We went to school together.

MR. GAUSNELL: High school?

VENIREMAN BYE: Yes.

MR. GAUSNELL: Did you go to college?

VENIREMAN BYE: No.

MR. GAUSNELL: Were you fairly good friends with Mr. Armour?

VENIREMAN BYE: Well, you know, we lived in the same neighborhood.

MR. GAUSNELL: So it's safe to say, then, that you think Dan Armour would not lie in any situation; is that correct?

VENIREMAN BYE: Yes, sir.

MR. GAUSNELL: And that no matter what he said today, it would be a true statement; is that true?

VENIREMAN BYE: Yes, sir.

During further questioning of a jury panel member called "A Venireman" in the transcript, but who is admitted to be Mr. Collier, the following colloquy occurred:

A VENIREMAN: You were talking about Dan Armour a while ago, and I do know Dan. And I thought that perhaps I should answer a question that you asked.

MR. GAUSNELL: Any time that you can, I want you to be as honest as you can, because this is my chance to see what kind of prejudices or biases you may have.

A VENIREMAN: I went to high school with him.

MR. GAUSNELL: So you know him pretty well?

A VENIREMAN: Yes, and I have been involved with him on a couple of things where he's done some investigation regarding my place of employment.

MR. GAUSNELL: So Mr. Armour, you would believe, would be pretty reputable and would not lie under any circumstances up on the stand?

A VENIREMAN: Not in my opinion.

After voir dire was completed, defense counsel moved to strike veniremen Bye and Collier for cause. At this point, the following conversation was held between the attorney and the trial judge:

MR. GAUSNELL: Well, perhaps William Bye and David Collier. Both of them know Dan Armour and both believe, regardless of what he says—

THE COURT: That was your statement, counsel. They never said a word.

MR. GAUSNELL: They said 'yes.'

THE COURT: After you said, 'Mr. Bye, do you believe he would tell the truth in all circumstances?'

MR. GAUSNELL: That was the question I put to him, and he said 'yes.'

THE COURT: Yes, I think he did. I think they both would tell the truth. I was at some loss. You didn't actually ask a question. You made a statement and then asked them to agree with it, which both of them did.

MR. GAUSNELL: I meant to ask a question, and I believe they answered my question.

The trial court denied the motion to strike for cause, and defense counsel was forced to use two of his peremptory challenges to remove Bye and Collier from the jury panel.

At trial, Armour testified that after the crime was reported to the authorities, he was assigned to investigate it. During his investigation, Armour formed an opinion that Charles King was a prime suspect. This opinion was based on hearsay information Armour had received through a telephone tip and interviews with potential witnesses. Armour further testified that, in an effort to see if Mrs. Croney could identify a picture of King as the robber, he took King's picture, along with pictures of six other men, to Mrs. Croney, who identified the picture of King as a picture of the person who robbed her.

In her testimony, Mrs. Croney identified King as the person who had taken $300 of the oil company's money from her on the day in question, and that she had given him the money through fear of force. She also testified that about a week after the robbery, she had picked King's picture out of a photographic array presented to her by Armour and identified it as a picture of the man who had robbed her.

 The right to trial by jury, as guaranteed by art. I, § 22(a) of the Missouri Constitution, means the right to be tried by a fair and impartial jury. *Tate v. Giunta*, 413 S.W.2d 200, 203 (Mo.1967). A prospec-

tive juror who does not enter the jury box with an open mind, free from bias or prejudice in favor of or against either party, is not a competent juror. *Littell v. Bi–State Transit Development Agency,* 423 S.W.2d 34, 36 (Mo.App.1967). Denial by a trial court of a legitimate request by an accused to excuse for cause a partial or prejudiced venireman constitutes reversible error. *State v. Morrison,* 557 S.W.2d 445, 446 (Mo. banc 1977).

■ A defendant in a criminal case is entitled to a panel of qualified jurors before he is required to make his peremptory challenges. *State v. Draper,* 675 S.W.2d 863, 865 (Mo. banc 1984). While trial courts have the initial discretion to determine a prospective juror's qualifications, "appellate courts are not required to give blind deference to a trial judge's exercise of discretion ... and should ... review the record and determine whether or not the trial judge, in fact, abused his discretion." *State v. Thompson,* 541 S.W.2d 16, 18 (Mo. App.1976).

■ During voir dire by the prosecuting attorney, veniremen Bye and Collier said that their acquaintance with Detective Armour would not affect their ability to fairly determine the case based on the evidence presented at trial. However, later, in answer to questions by defense counsel, they both said they had gone to school with Armour, and Bye said he had lived in the same neighborhood as Armour. Bye said he did not believe Armour would lie in any situation, and that no matter what Armour said, Bye would believe it to be true. Collier indicated that, in his opinion, Armour was reputable and would not lie under any circumstances while on the witness stand. These statements indicated bias on the part of these veniremen in favor of the state's witness Armour, and were at odds with their earlier assertions that they could give King a fair trial.

■ Where the answers of a prospective juror during voir dire are equivocal and disclose uncertainty about his ability to be impartial, the failure of a trial judge to sustain a challenge for cause is reversible error. *State v. Leipus,* 675 S.W.2d 896,

899 (Mo.App.1984), and cases cited therein. *See also State v. Brooks,* 693 S.W.2d 211 (Mo.App.1985), for an excellent discussion of issues raised that are similar to those raised in the case at bar.

In *State v. Butler,* 660 S.W.2d 225 (Mo. App.1983), a prospective juror, whose brother was a police officer, expressed partiality toward police officer testimony per se. However, a police officer's testimony at trial was not important in determining whether the state made a submissible case, and therefore, the court found the error in failing to sustain a challenge to the prospective juror was not prejudicial. *State v. Butler,* 660 S.W.2d 225 (Mo.App.1983).

■ Such is not the case here. Armour testified that, through the benefit of hearsay information, he had focused on King as a suspect, and that he had taken King's picture, along with others, to Mrs. Croney to see if she could identify one of the men as the robber. He also testified that Mrs. Croney identified the picture of King as the person who robbed her. This testimony, if properly objected to, was inadmissible under the circumstances shown here, as it bolstered and corroborated Mrs. Croney's testimony regarding the identity of the robber. *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972). Without Armour's testimony, the only evidence the state would have had on the identity issue was the testimony of Mrs. Croney. The jury would have been required to evaluate Mrs. Croney's identity testimony as opposed to the testimony of two alibi witnesses who said King was with them at the time of the robbery. Since Armour's testimony corroborated that of Mrs. Croney, we cannot say with any degree of certainty that King would have been convicted without the testimony of Armour being a material part of the state's case. This made the question of Armour's credibility a serious one, as he testified to material facts. The situation mandated that no venireman should be allowed to stay on the jury panel who had a preconceived opinion of Armour's credibility.

The trial court's denial of defense counsel's motion to strike for cause the names of Bye and Collier from the list of prospective jurors was an abuse of discretion, and constituted reversible error.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

CROW, C.J., and HOLSTEIN, J., concur.