**STATE of Missouri, Respondent,**

v.

**Robert Lee MOFFITT, Appellant.**

**No. 15094.**

Missouri Court of Appeals,
Southern District,
Division One.

July 11, 1988.

Henry S. Clapper, Clapper, Randall & Woodard, P.C., Monett, for appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Following a jury trial in the Circuit Court of Lawrence County, defendant Robert Lee Moffitt was convicted pursuant to a two-count information of rape and incest, the victim being defendant's thirteen year old stepdaughter. Defendant was sentenced to five years' imprisonment on the rape count and fined $5,000 on the incest count. Defendant appeals.

**586**

## I.

The first point raised by defendant relates to the following exchange between defense counsel and a venireman during voir dire:

MR. WOODARD: Is there anyone here who cannot? Rape/incest, rape/incest, rape/incest. There's nothing going to bite you on the leg by that term, those are criminal charges brought by the State, they have not been proven.

Sir, I noticed you when you heard the charge, and I watched you, your eyes sparkled. You turned to this man and you looked at him you thought to yourself, how could anyone do that. Am I incorrect?

VENIREMAN McCULLAH: No, you're not.

In subsequent questioning, McCullah was silent when he and other veniremen were asked if anyone of them would not follow the instructions of the court.

Defendant contends that McCullah was disqualified from serving on the jury by his answer, quoted above. As a result, defendant argues he was denied the right to a full array of twenty four qualified veniremen to which he was entitled under § 546.180.1(2).[1] See *State v. King*, 746 S.W.2d 120, 123 (Mo.App.1988).

The trial court has wide discretion in determining the qualifications of prospective jurors and its ruling will be disturbed on appeal only when clearly against the evidence and it constitutes an abuse of discretion. *State v. Johnson*, 722 S.W.2d 62, 65 (Mo. banc 1986). Even in those cases where a venireman clearly expresses reservations about his impartiality because of the nature of the charge, subsequent interrogation indicating that such witness could put aside personal feelings and follow the law are sufficient to demonstrate that the trial court has not abused its discretion in overruling a challenge of a venireman for cause. See *State v. Johnson, supra.*

Defense counsel's question and McCullah's response are fraught with am-

biguity. McCullah's answer may have meant, "No, you're not *correct*," or "No, you're not *incorrect*." Assuming McCullah meant the latter, the response indicated shock at the nature of the charges. However, McCullah's personal feelings about rape or incest were immaterial unless so unyielding as to preclude him from following the law under the court's instructions. *State v. Foulk*, 725 S.W.2d 56, 72 (Mo.App. 1987).

## II.

Defendant's second point complains that the trial court erred in restricting the voir dire examination of veniremen. The specific questions or comments to which defendant refers were as follows:

MR. WOODARD: Credibility is like scales, the State starts with the burden and until such time as they can bring the scales—

MR. LEWRIGHT [Prosecutor]: Your Honor, may we—I'm going to object, that's an attempt to define reasonable doubt.

THE COURT: Sustained.

MR. WOODARD: The State has the burden of proof; does anybody have any problems with that? Does anyone have any questions about what burden of proof is?

Let me say this. Let me get my list so you can give me your name.

VENIREMAN GARRETT: Arwood Garrett.

MR. WOODARD: Mr. Garrett, let me ask you this: The burden of proof is such that I would think that if you were to hear the State's case it would have to be sufficient to do what with you?

MR. LEWRIGHT: Your Honor, I would object once again.

THE COURT: The Court has already given the jury an instruction and defined the term burden of proof, beyond that you can't go. I don't know where you're leading. I think you're asking the juror to define to you what he thinks the bur-

---

1. Unless otherwise indicated, all references to statutes are to RSMo, 1986.

den of proof is. The jury has already been instructed on that.

MR. WOODARD: All right, Judge, let me do this then. In other words, if you went back to the jury room and you had a question that would be in your mind, reasonable doubt, would that be correct?

MR. GARRETT: I would think so.

MR. WOODARD: And the State would not have met their burden—

MR. LEWRIGHT: Your Honor—

THE COURT: Do you have an objection?

MR. LEWRIGHT: I object, he is attempting to define reasonable doubt. We could both get into the argument. The Court will supply the definition to that.

THE COURT: The objection is sustained. . . .

Thereafter, defense counsel's voir dire of prospective jurors continued:

MR. WOODARD: "A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all of the evidence in the case."

Now, when the Judge gives you the charge that's the law. Is there anyone here who has any problems at all with following the charge as given to you by the Court?

MR. LEWRIGHT: Your Honor, I really don't like to continue objecting, I'm not trying to hide anything, but if he wants to read the law have him read the whole law. He just defined reasonable doubt.

THE COURT: I think if you are going to ask the question, Mr. Woodard, you ought to read the entire definition as in the instruction.

MR. WOODARD: I will be happy to read the entire instruction.

[Defense counsel reads the entire instruction.]

Is there any one any of you who, if selected as a juror, could not for any reason follow this?

(NO RESPONSE)

The questions and statements of defense counsel were clearly designed to comment upon or elicit juror comments upon matters dealt with in the burden of proof instruction. See MAI–CR 3d 302.04. A trial court does not abuse its discretion in preventing a defendant's questions during voir dire which carry with them a comment upon the issues dealt with in the instructions on burden of proof, reasonable doubt, and presumption of innocence. *State v. Taylor*, 714 S.W.2d 767, 774 (Mo.App.1986). Defendant's second point is without merit.

### III.

Defendant's third point is that the court erred in admitting Exhibit 10 and in ordering individual photocopies of Exhibit 7 to be made and passed to the jury. Exhibit 10 is a speculum, a medical instrument like one used by Dr. Melissa Rendlen, a physician, to perform an examination of the victim's vagina after the sexual encounter was reported. Exhibit 7 is a note written by the victim in which she states the defendant made her have sex with him. The note is addressed to the victim's mother and was the first report made to her mother of defendant's conduct.

Defendant's assertion here that the speculum was not admissible because it was "not connected with the defendant or his crime" disregards the testimony of the examining physician. Dr. Rendlen testified she used a speculum to examine the victim and identified Exhibit 10 as the speculum most commonly used in the course of such examination. The examination was precipitated by the child's complaints about defendant and was intended to confirm or refute the complaints. While the results of the examination were not conclusive, they were consistent with the child's complaints. There was a connection between the exhibit, the crime, and the defendant. The court did not err in admitting Exhibit 10.

Photocopies of Exhibit 7 were passed to the jury only after defense counsel objected to the victim's mother reading the note to the jury. In response, the trial judge ordered thirteen copies made and each juror was given an opportunity to read an individual photocopy of the note.

The court then ordered all copies collected from the jurors.

The passing of exhibits to jurors for their inspection rests within the sound discretion of the trial court. *State v. Howard*, 360 S.W.2d 718, 721 (Mo.1962). To expedite the reading of the exhibit, the trial court ordered the photocopies made so that all jurors could read it at once. The prejudice from making photocopies for that purpose is indiscernible. We find no abuse of discretion.

### IV.

■ In his fourth point, defendant contends the trial court should have granted a mistrial after the State sought to introduce Exhibit B. Exhibit B is a letter written by defendant's wife, the mother of the victim. The letter is addressed to friends of defendant who had become acquainted with defendant's wife after the marriage. First reference to the letter came during cross-examination of defendant's wife by defense counsel. The letter, in which she states, "He [defendant] swears he didn't do it," was used to impeach her trial testimony that defendant did not deny the conduct when she confronted him. Only on redirect examination did the State attempt to offer the exhibit in evidence. The trial judge refused the offer. The State persisted by inquiring why the witness wrote the letter and attempting to summarize the letter's contents. The letter was again offered in evidence and refused. Defendant then moved for a mistrial, which was overruled.

The declaration of a mistrial is a drastic remedy that should be employed only in the most compelling of circumstances in which prejudice may be removed in no other way. *State v. Johnson*, 700 S.W.2d 815, 819 (Mo. banc 1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986); *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983). Our review is limited to whether the trial court abused its discretion in refusing the requested mistrial. *State v. Davis, supra.*

The ruling of the trial court prevented the jury from reading Exhibit B. Any prejudicial matters contained in the exhibit were thus excluded from the jury's consideration. Despite the State's persistence in offering Exhibit B, the equally persistent rejection of the exhibit by the trial court prevented any potentially improper and prejudicial evidence from reaching the eyes or ears of the jury. We find no abuse of discretion in failing to grant a mistrial.

### V.

■ In his fifth point, defendant complains about a statement made by the trial judge during the course of defense counsel's cross-examination of the victim's mother. Defense counsel was attempting to establish that because the victim had been visiting with her natural father, the rape could not have occurred on a Friday in November of 1985, as charged. Questioning then turned to similar visits by the victim with her natural father in December of 1985:

Q: My question is, do you specifically recall her having a visit—weekend visitation with her father in December of 1985?

A: Yes.

Q: Do you remember which weekend it was?

A: No.

Q: Do you remember how close it was to Christmas?

A: I don't remember what day Christmas was, it was probably either the weekend before or weekend after, very close.

Q: Again you're saying probably. I must insist if you know the answer give it, if you don't know it I'm asking—

MR. LEWRIGHT: Your Honor, I will object, the question to her was if she knew, then she said she recalled it, then he said when—

MR. CLAPPER: That's not correct. She's saying "probably" I'm asking her for specifics, if she knows.

THE COURT: The jury understands she doesn't know exactly which weekend it was. Let's move on we're quibbling over words that are plain to the jury.

Defendant argues that the trial judge created the impression in the presence of the

jury that the defendant was intentionally impeding the case by pursuing issues of no importance.

Defendant relies primarily on *State v. Wren*, 486 S.W.2d 447 (Mo.1972). In the *Wren* case, the trial judge overruled an objection by the State but told defense counsel that he would "allow you to develop this *ad nauseum* [sic]." On appeal, the court said at 448:

"The mere criticism of counsel is not ordinarily considered a ground for reversal.... The reprimanding of counsel during the progress of a trial is largely within the discretion of a trial court." Such a general rule necessarily is acceptable as a standard to establish that one person, the judge, must be in charge of the courtroom to assure an orderly trial.

The court went on to hold that a comment which conveys to jurors an impression that the evidence being offered is, in the mind of the judge, totally absurd, amounts to an improper comment on the evidence prejudicing a defendant's right to a fair trial.

More recently, situations in which prejudice results because of comments made by a judge were discussed in *State v. Koonce*, 731 S.W.2d 431, 441–442 (Mo.App.1987):

The whole question of prejudice because of comments, questions or statements by a judge usually arises in one of these contexts [sic]: (1) a judge may comment so obviously as to indicate his opinion of guilt, or that a witness is honest or dishonest, thereby depriving defendant of a fair trial, (2) a judge may question a witness to develop the truth more fully or to clarify a matter. This is proper if the questioning reveals no prejudice and (3) the judge may act to discipline or correct an attorney or witness in a nonprejudicial manner. In these various context, whether there is prejudicial error depends upon other elements. The judge is not to convey an attitude of hostility or bias against the defendant; the judge must not pursue truth in the manner of the prosecutor; the judge shall not engage in protracted examination, and even then the judge might

purge his conduct of the prejudice. (Citations omitted.)

The court's statements here were not comments on the evidence or the credibility of a witness. The admonition to counsel did not convey an attitude of hostility or bias toward the defendant. At most, the comment by the judge was a mere criticism of counsel and did not rise to the level of a prejudicial comment on the quality of the evidence.

## VI.

Defendant's sixth point relates to the rebuttal portion of the State's closing argument when the prosecuting attorney stated:

There is no implication here that [the victim] is in any way immoral. I kept waiting for that, kept waiting for them [sic] figure out some way somebody else had sexual relations with her, but they never did. There is only—

At that point, an objection was made by defense counsel asking that the comment be stricken and the jury admonished to disregard the statement because other sexual conduct of a complaining witness is not admissible. The court responded by stating:

Counsel has made a correct statement of the law; it is not the Court's view that the counsel is arguing that point however.

The State went on to argue that the only evidence was that defendant had sexual intercourse with the victim.

Defendant now contends the State was improperly permitted to argue matters not in evidence. Defendant claims that the comments of the prosecutor left an inference that the defense was suggesting someone else had sexual relations with the victim or an inference that defendant had a burden to impugn the victim's chastity.

In support of his contention, defendant cites *State v. Cannady*, 660 S.W.2d 33 (Mo.App.1983). There were two instances of allegedly improper argument by the State in the *Cannady* case. In the first instance, a proper objection was made in response to an argument by the State of

matters outside the record. The objection was sustained and the jury was directed to disregard the argument by the trial court. On appeal, the court held that the curative action by the trial court and the strength of the State's case justified a denial of a motion for mistrial.

The second instance of improper argument in the *Cannady* case was not objected to by defendant. On appeal, defendant claimed that the State's argument suggested there were undisclosed facts which, if disclosed, would prove defendant was a drug supplier. In response to that argument, the court stated at 40:

> A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy arguments, will draw that meaning from among other abundant, less damaging interpretations.

Turning to the case now before the court, the defense counsel's closing argument centered on inconsistencies in the victim's testimony as to dates and the sequence of events, suggesting her testimony was the result of malice or guile toward defendant. The State's comments were a response to the inference of the defense argument that the victim lacked moral character and should not be believed. The State's rebuttal argument attempted to divert the attention from the defense argument which impugned the victim's character and toward the evidence in the case. As stated in *State v. Cannady, supra,* "The prosecutor can retaliate to an issue raised in defendant's closing argument, even though it might otherwise be improper." See also *State v. Bryant,* 741 S.W.2d 797, 799 (Mo.App.1987).

The trial court has broad discretion in the controlling of closing argument, with wide latitude accorded counsel in their summations, and a conviction will be reversed for improper argument only if it is established the complained of comments had a decisive effect on the jury's determination. *State v. Newlon,* 627 S.W.2d 606, 616 (Mo. banc 1982); *State v. Barrett,* 744 S.W.2d 856, 859 (Mo.App.1988). Defendant has failed to establish that the argument he complains of had a decisive impact on the jury's determination. A jury of reasonably intelligent persons would not conclude from the prosecutor's comments that the defendant had a burden to prove sexual misconduct by the victim with others or that defense counsel claimed she had engaged in sexual misconduct. The trial court in overruling the objection and denying the motion for new trial may have been persuaded that the comment had little, if any, impact on the jury. The trial judge was in the best position to assess the impact of the retaliatory remarks. See *State v. Walls,* 744 S.W.2d 791, 798 (Mo. banc 1988). The trial court did not abuse its discretion in overruling the objection of defendant.

## VII.

In defendant's final point, he claims that the cumulative errors presented under Points II through VI demonstrate that he was denied a fair and impartial trial. As has previously been noted, Points II through VI have been determined to be without merit. Therefore, Point VII is likewise without merit. The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.