STATE of Missouri, Respondent,

v.

Norman Lee REED, Appellant.

No. WD 31704.

Missouri Court of Appeals,
Western District.

Oct. 13, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 17, 1981.

Application to Transfer Denied
Jan. 18, 1982.

Peter N. Sterling, Acting Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Thomas G. Auffenberg, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SOMERVILLE, Chief Judge.

An information was filed in the Circuit Court of Randolph County charging defendant with kidnapping Larry Calvin Hughes, Jr., on March 9, 1978, in violation of Section 559.240, RSMo 1969. Defendant was found guilty by a Saline County jury on change of venue and his punishment was fixed at ten years confinement in the Missouri Department of Corrections. Judgment entered and sentence imposed accordingly.

The sufficiency of the evidence to support the guilty verdict stands unchallenged. Charges of error on appeal, two in number, are laid at the doorstep of the prosecuting attorney by reason of a certain question posed by him to the jury panel on voir dire and certain statements made by him to the jury during closing argument.

The record on appeal, addressed in terms of the points of error raised, reveals that the state was forced to rely mainly upon circumstantial evidence to prove that defendant, acting in concert with his brother, forcibly seized Larry Calvin Hughes, Jr., from his place of employment in Moberly, Missouri, on March 9, 1978, with intent to cause Larry Calvin Hughes, Jr., to be secretly confined within this state against his will. Additional evidence relied upon by the state, also circumstantial in part, disclosed that the victim was placed on the rear floor of a station wagon under a fold-down seat and taken from Randolph County into Howard County to an area known as "Blue Bluff". There, the victim was ejected from the station wagon and a shot was heard. A snow covered corpse found in the "Blue Bluff" area of Howard County, on March 10, 1978, was identified as the body of Larry Calvin Hughes, Jr. The record also contained evidence that the victim was seized and taken to the "Blue Bluff" area by defendant and his brother for the purpose of heaping revenge upon the victim because he was dating a girl friend of defendant's brother.

The voir dire question forming the crux of defendant's first point arose as follows: "In this case there will be much circumstantial evidence. I don't say all, but there will be much circumstantial evidence. Is there anybody here who will demand an eye witness, so to speak?" Defense counsel's objection to the preceding question was overruled by the trial court. Defendant casts his first point in terms of the above question extracting a commitment from the veniremen "to be satisfied" with all circumstantial evidence offered by the state.

■ Integrity of the right of trial by jury, in no small measure, depends upon the composite fairness and impartiality of the individual jurors finally selected to try a particular case. Whether an individual juror is fair and impartial, or biased and prejudiced, turns, on final analysis, upon an individual juror's state of mind. Certain carefully composed questions propounded to members of the jury panel on voir dire has evolved as the most practical method for probing the minds of prospective jurors to ascertain those who are fair and impartial and those who are biased and prejudiced. Ultimately, any objective basis for determining a juror's state of mind must turn on the verity of the responsive answers. In order to achieve selection of a fair and impartial jury, it stands to reason that questions on voir dire calculated to expose prejudice should be liberally permitted while those calculated to create prejudice should be vigorously denied.

■ Control of the nature and scope of questions on voir dire examination of veniremen is necessarily lodged in the discretion of the trial court "and an appellate court will differ or interfere with the exercise of that discretion only when the record shows a manifest abuse of discretion and a real probability of injury to the complaining party." *State v. Scott*, 515 S.W.2d 524, 527 (Mo.1974). This is an abstract endeavor which, in the context of this case, calls into play a standard limitation expressed in *State v. Tally*, 22 S.W.2d 787, 788 (Mo.1929): "A juror is sworn and instructed to decide the issues according to the law and the evidence. Counsel may not, in advance, ask him to speculate upon what he might do, and how his verdict might be influenced by certain contingencies that may arise later. His view of the evidence and the instruction may be influenced by the reasoning of his associates and by the argument of counsel, and there is no objection to that. The only thing required is that he reach a conclusion which is satisfactory to him. Such questions are therefore improper."

Cases since *State v. Tally, supra*, disclose that it has been broadly construed as holding that questions to prospective jurors which ask them to speculate and commit

themselves to a course of action depending upon certain contingencies which may subsequently occur or arise during trial are impermissible as they denigrate the solemn duty of jurors to follow the law as laid down in the instructions, and evaluate the evidence in the triad of said instructions, the arguments of counsel and the reasoning of fellow jurors. The standard limitation enunciated in *State v. Tally, supra,* has been applied in a diversity of situations as typified by the following pattern of cases. In *State v. Pinkston,* 336 Mo. 614, 79 S.W.2d 1046 (1935), it was held improper and constituted reversible error to ask prospective jurors whether or not they "would" assess the death penalty if the evidence warranted it. In *State v. Katz Drug Company,* 352 S.W.2d 678 (Mo. banc 1962), it was held improper and constituted reversible error to ask prospective jurors whether they would "convict" if certain facts were proven and the court instructed that such was a violation of the law. In *State v. Kiner,* 441 S.W.2d 720 (Mo.1969), it was held improper and constituted reversible error to ask prospective jurors whether they "would not vote to find ... [defendant] guilty" if the state proved the "guilt of defendant" beyond "a reasonable doubt". In *State v. Thursby,* 245 S.W.2d 859 (Mo.1952), the state's interrogation of veniremen concerning their views of the credence and weight to be given the respective testimony of a prostitute and of a procurer was characterized as "objectionable because it tended to commit the jurors to an opinion, in advance of the trial, upon the credibility of the witnesses and weight of their testimony." Id. 863. The *Thursby* court concluded, however, that the condemned line of interrogation did not rise to the level of prejudicial error because defense counsel had engaged in the same line of inquiry upon voir dire. Questions calling for prospective jurors to precommit themselves to certain courses of action depending upon contingencies which might subsequently occur or arise were quintessential to the holdings in the cases heretofore cited.

■ In this case, proof of the seizure of Larry Calvin Hughes, Jr., the victim of the

kidnapping, rested upon circumstantial evidence. The controversial question involved here, "Is there anybody here who will demand an eyewitness, so to speak?", was asked in the context of circumstantial evidence. Neither a negative nor an affirmative answer thereto could reasonably be construed as committing a prospective juror to a particular course of action, i.e., to convict or acquit, or to give credibility and weight to the testimony of any particular witness. Rather than attempting to extract a commitment from prospective jurors to a future course of action dependent upon certain contingencies that might subsequently occur or arise, a realistic analysis of the question as posed demonstrates that it was a legitimate attempt to discover whether any venireman harbored any preconceived doubts as to the efficacy of circumstantial evidence. See *State v. Neal,* 591 S.W.2d 178 (Mo.App.1979); and *State v. Roseman,* 583 S.W.2d 232 (Mo.App.1979).

The following remarks of the prosecuting attorney during closing argument form the crux of defendant's second point: "The range of punishment is two years to ten years in the Missouri Division of Corrections. Now, you are trying the defendant only for kidnapping here. Remember that the kidnapping happened in Randolph County, and from the evidence you are well aware that the murder took place in another county. So that's not before you. That took place in Howard County. And there has been no evidence, or course, and there can be none, of what happened to that murder charge. So you are concerned with the kidnapping. Two to ten years ...." Defense counsel timely objected on the ground that "[t]here is no evidence of any murder charge ... [i]t's beyond the scope of the evidence ... and I ask that it be stricken." The trial court sustained defense counsel's objection and ordered the argument in question stricken. The action taken by the trial court was immediately followed by a request from defense counsel for declaration of a mistrial which was denied by the trial court.

Defendant's second point is bifurcated, as hereinafter demonstrated, and premises error on the trial court's refusal to declare a mistrial because of improper argument by the prosecuting attorney. One aspect of defendant's bifurcated point is predicated upon the ground asserted and relied upon by defense counsel during trial and preserved for review in defendant's motion for new trial, i.e., the nonexistence of any evidence that defendant was charged with murder in connection with the death of Larry Calvin Hughes, Jr. The other aspect of defendant's bifurcated point appears to be predicated on a ground neither asserted nor relied upon by defense counsel during trial nor preserved for review in his motion for new trial, i.e., that the controversial argument was injected by the prosecutor for the purpose of laying a foundation to improperly argue that the maximum sentence should be assessed against defendant by the jury in the event it found him guilty of kidnapping.

The case law of this state is replete with decisions that declaration of a mistrial because of improper prosecutorial argument is a drastic remedy, should be utilized only in extraordinary circumstances, is a matter initially resting in the broad discretion of the trial court, and the trial court's exercise of such discretion, absent a manifest abuse thereof, shall not be interfered with on appeal. See for example: *State v. Schlagel*, 490 S.W.2d 81 (Mo.1973); *State v. Williams*, 602 S.W.2d 209 (Mo.App.1980); *State v. Hodges*, 586 S.W.2d 420 (Mo.App.1979); and *State v. Wright*, 558 S.W.2d 321 (Mo. App.1977).

■ It is also well established in this state that reference to matters not in evidence during prosecutorial argument—in the instant case an absence of any evidence that defendant had been charged with the murder of Larry Calvin Hughes, Jr.—is improper. *State v. Strickland*, 609 S.W.2d 392 (Mo. banc 1980); *State v. Murphy*, 592 S.W.2d 727 (Mo. banc 1979); *State v. Cuckovich*, 485 S.W.2d 16 (Mo. banc 1972); and *State v. White*, 440 S.W.2d 457 (Mo.1969).

■ Reference during prosecutorial argument to matters not in evidence vis-a-vis refusal by the trial court to declare a mistrial does not ipso facto spell abuse of discretion. This observation is confirmed by what was said in *State v. Bailey*, 526 S.W.2d 40, 43 (Mo.App.1975): "A basic principle governing jury argument is that counsel should refrain from arguing matters not in evidence. *State v. Cuckovich*, 485 S.W.2d 16[21] (Mo.1972); *State v. White*, 440 S.W.2d 457[5] (Mo.1967). But this broad prohibition was put in proper perspective in *United States v. LeFevre*, 483 F.2d 477[6] (3rd Cir. 1973): 'We do not believe that prosecutorial statements which refer to facts not in evidence constitute reversible error per se. Rather, the court is under an obligation in such instances to consider the entire record to determine whether the errors were sufficiently prejudicial to have tipped the scales and thereby denied defendant a fair trial ...' To the same effect see *Hartley v. Steiman*, 408 S.W.2d 81[1] (Mo.1966); *Arroyo v. Keller*, 433 S.W.2d 584, 589 [3–6] (Mo.App.1968)'." *State v. Bailey, supra*, was cited with approval and followed in *State v. Bellew*, 586 S.W.2d 461, 463 (Mo.App. banc 1979).

The trial court's favorable ruling on defense counsel's objection to the complained of argument and its accompanying order striking it leaves little doubt that the trial court deemed it to be improper. Parenthetically, it appears arguable that the thrust of the prosecutorial argument was to caution the jury that defendant was on trial for kidnapping notwithstanding a profusion of evidence that the victim met his death by homicidal means.

■ Assuming, however, that the prosecutorial argument under attack was improper, the issue on appeal cannot be resolved by the simple expedient of branding it reversible error per se; this court is obliged to weigh the argument against the entire record to determine whether it so prejudicially "tipped the scales" as to deny defendant a fair trial. *State v. Bailey, supra*. Throughout the course of the trial evidence was introduced by the state show-

ing that defendant, acting in concert with his brother, murdered the victim of the kidnapping after arriving at the "Blue Bluff" area in Howard County. Defendant makes no complaint on appeal as to the admissibility of such evidence and tacitly acquiesces in the theory advanced by the state that it was admissible to establish a motive for the kidnapping and show a common scheme or plan under the general rule enunciated in cases such as *State v. Mitchell*, 491 S.W.2d 292, 295 (Mo. banc 1973); *State v. Giannini*, 606 S.W.2d 780, 781 (Mo. App.1980); and *State v. Harlson*, 565 S.W.2d 773 (Mo.App.1978). When the prosecutorial argument bearing the brunt of defendant's attack on appeal is weighed against the record in this case, replete as it was with evidence that the victim died as the result of a homicide perpretrated by defendant and his brother acting in concert, it cannot be said that the controversial argument, even though improper, so "tipped the scales" as to deny defendant a fair trial. It is appropriate to be reminded that the prosecutor's argument did not carry the imprimatur of the trial court as it sustained defense counsel's objection thereto and ordered it stricken. The aforementioned also weighs in favor of the state in the ultimate determination of whether the prosecutorial argument so "tipped the scales" as to deny defendant a fair trial.

The remaining aspect of defendant's bifurcated point on appeal—that the controversial argument was injected by the prosecutor for the purpose of laying a foundation to improperly argue that the maximum sentence should be assessed against defendant by the jury in the event it found him guilty of kidnapping—was neither asserted by defendant during the course of the prosecutor's closing argument nor preserved for review in defendant's motion for new trial. Perforce, it has not been preserved for appellate review. *State v. Holt*, 592 S.W.2d 759, 776 (Mo. banc 1980). Defendant has not asked this court to review the matter as "plain error" and this court has no inclination to sua sponte do so. The logic behind this court's disinclination to review the matter sua sponte is succinctly expressed in *State v. Murphy*, 592 S.W.2d

727, 732 (Mo. banc 1979): "Before review of these matters it is appropriate to note that Rule 27.20(c) permits consideration of 'plain errors' affecting substantive rights when they result in manifest injustice or miscarriage of justice. The rule does not cover all trial error, should be exercised sparingly, cannot be used as a vehicle for review of every alleged trial error which is not asserted or preserved for review, and is limited in its application to cases where there is a manifestation and showing that injustice or miscarriage of justice results if the rule is not invoked. *Ordinarily, alleged errors on closing argument do not justify relief under this standard unless they are determined to have a decisive effect on the jury.*" (Emphasis added.) Those portions of the record undergirding the rationale employed by this court for rejecting the first aspect of defendant's bifurcated point on appeal auger, with equal force, against a determination on appeal that the prosecutorial argument, in the context of the second aspect of defendant's split point, "had a decisive effect on the jury". *State v. Murphy, supra.*

Judgment affirmed.

All concur.