**STATE of Missouri, Respondent,**

v.

**Noble Paul OFIELD, Appellant.**

**No. WD 33687.**

Missouri Court of Appeals,
Western District.

April 26, 1983.

Willard B. Bunch, John Edward Cash, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Appellant Noble Ofield was jury convicted of carrying a concealed weapon, § 571.-115, RSMo. 1978,[1] and sentenced to 90 days in the Jackson County jail. The court found him to be a persistent offender and enhanced his sentence by 90 days for a total of 180 days.

On June 16, 1981 at approximately 12:42 a.m., Sergeant Dwayne Evans of the Raytown, Missouri Police Department, was flagged down by a man parked in a car at

_____

1. All statutory references are to RSMo.1978,    unless otherwise indicated.

Woodson Road and 63rd Street in Raytown. The man in the parked car shouted across the road to the officer, who was traveling in the opposite direction, that he wanted to know how to get to Kansas City. Sergeant Evans asked the man to wait a minute and pulled in behind the parked vehicle in his marked patrol car. As a matter of department procedure, Sergeant Evans radioed in the license number of the parked vehicle to the police dispatcher. The individual in the car, later identified by Sergeant Evans as the appellant, approached the police car and again inquired as to directions to get to Kansas City. The officer gave directions and the appellant turned around and headed back toward his vehicle. Before the appellant reached his car, a response from the police dispatcher came over the patrol car radio informing Sergeant Evans that the license to the vehicle was registered in the name of Noble Ofield, and that two warrants were outstanding on him for receipt of stolen property. The Sergeant then exited his vehicle and approached the appellant and asked to see his driver's license. The appellant searched in his clothing for his license and unable to find it stated that it must be in his car. Appellant identified himself as Noble Ofield and told the officer that he was unaware of any outstanding warrants. Sergeant Evans ordered the appellant to sit in the front seat of his car while Evans got his flashlight from the patrol car. The appellant obeyed the officer's order and sat on the front seat of the car, with the door open and his feet outside the car. The Sergeant turned his patrol car's spotlight on appellant's vehicle so as to illuminate the inside of the car.

The Sergeant as he was about to leave his patrol car with his flashlight, heard an unusual noise like metal against metal coming from the appellant's vehicle. Suspicious, Evans moved around to the back of the patrol car so as not to alert appellant by breaking the beam of the spotlight, and then came up on the passenger side of the appellant's car. The appellant was moving around in the car and looking in the rear view mirror during this time. Sergeant Evans observed the appellant through the window on the passenger side and saw that he had a revolver in his right hand, beside his leg. The appellant pushed the revolver down into the crevice between the seat cushion and seat back of his car and then withdrew his hand. At this point Sergeant Evans drew his revolver, tapped on the window with the muzzle of his gun and ordered appellant to leave the car without his revolver. Sergeant Evans was soon joined by two other officers who assisted in the arrest. Evans retrieved the revolver from appellant's car, and discovered that it had five rounds of live ammunition in it.

Appellant raises three points of error on appeal. His first point contends that the testimony of the state's sole witness was so contradictory as to be wholly lacking probative value as to the essential elements of knowledge and concealment, and thus it was error for the court to overrule appellant's motions for judgment of acquittal. Appellant's second point contends error in excusing for cause a venirewoman who stated she did not wish to serve as a juror because she knew the appellant and that the appellant was prejudiced in that the excusing of this black prospective juror denied him the opportunity to have at least one member of his own race on the jury. He also claims this deprived him of a full panel of qualified persons from which to make his strikes. The third point of error contends the trial court erred in refusing to grant a mistrial and in overruling appellant's objection to statements in the prosecution's closing argument that implied appellant had intended to harm the officer. The conviction is affirmed.

■ Appellant's first point as to the inconsistent testimony of the state's witness is ruled against him. Although the appellant contends that Sergeant Evans tailored his testimony to fit the necessary elements of proof, there is absolutely no evidence of this on the record. As the state notes the evidence presented was not self-contradictory at all, and that it was clearly physically possible for the appellant to secrete the handgun while keeping his feet outside of the vehicle during observation by the officer.

The law in Missouri is clear as to inconsistencies in testimony or contradictory testimony. In a recent case, *State v. Donahue,* 625 S.W.2d 947, 949 (Mo.App.1981) this court held:

Inconsistencies in testimony are fact questions left to the determination of the trier of fact. An accused is not entitled to an acquittal and such inconsistencies do not render such testimony insufficient as a matter of law. The weight and credibility of such testimony is within the province of the trier of fact. (Citations omitted.)

█ In the instant case, the officer's testimony that the appellant placed the handgun between the seat cushion and the seat back of the automobile, so that the officer could not see it, made a submissible case. Inconsistencies are proper matters for jury consideration in determining what weight and credibility to give certain testimony, they do not, however, support a charge of insufficiency of the evidence on appeal. *State v. Wright,* 476 S.W.2d 581, 584 (Mo.1972). *See also State v. Johnson,* 539 S.W.2d 668, 669 (Mo.App.1976); *State v. Sadler,* 613 S.W.2d 682, 684 (Mo.App.1981). Appellant's first point of error as to whether Sergeant Evans' testimony was credible due to certain inconsistencies is not a matter reviewable by this court and is thus ruled against him.

The appellant's second point contending error in excusing for cause a venirewoman who stated that she knew the appellant and did not wish to serve as a juror, is also ruled against him.

Not only does appellant contend error and prejudice in excusing the venirewoman but he further contends that the prejudice was aggravated by the fact that the woman was the sole black venireperson, and that her presence on the jury would have served to minimize the possibility of a prejudiced or racist approach on their part.

█ Appellant raised no objection at the time the venirewoman was excused, nor did he request any further examination to determine if in fact he could afford him a fair trial. A challenge made for the first time after conviction can only be considered for plain error resulting in a miscarriage of justice or manifest injustice. *State v. Schleicher,* 442 S.W.2d 19 (Mo.1969); *State v. Boyet,* 620 S.W.2d 439, 440 (Mo.App. 1981); *State v. Russell,* 575 S.W.2d 1, 2 (Mo.App.1978). The burden is upon the defense to discover and present to the court factors that may qualify or disqualify jurors. Appellant here had the opportunity to press further in questioning the venirewoman as to her qualifications but chose not to do so. *State v. Cheesebrew,* 575 S.W.2d 218, 222 (Mo.App.1978). The appellant, not having requested further examination of the venirewoman at the time she was stricken, and not having objected to her being stricken, cannot now complain of the court's action on appeal. Appellant has presented no evidence to indicate that he was not afforded a panel of qualified and unbiased jurors and thus it is clear that no miscarriage of justice or manifest injustice occurred.

The venirewoman gave no indication of not wanting to serve until such time that she realized that she actually knew the appellant. Her statements to the effect that she would rather not serve knowing the appellant clearly indicated that she believed she would have difficulty in reaching a fair verdict. The transcript reflects the venirewoman's feelings:

Q: Do you feel that since you know the defendant, you do not feel you could give either the State or him a fair trial?

A: *Right. I prefer not to serve.* Thank you. (Emphasis added.)

If a venireperson shows doubt as to whether that person can afford a fair trial, he or she should be stricken for cause. *State v. Lovell,* 506 S.W.2d 441, 444 (Mo. banc 1974). The striking of the venirewoman in the instant case, on the above ground, cannot be said to be an abuse of the court's discretion.

The appellant's contention that the presence of this black venirewoman would have reduced racial prejudice on the part of the

other jurors is mere speculation. There is no evidence that the venirewoman would have been biased in favor of the appellant. It is just as likely that the woman's acquaintance with the appellant was an unpleasant one. It is clear that because she knew the appellant, she unequivocally made known her desire not to serve on the jury, and this alone raises a sufficient inference of bias to strike the juror for cause.

The allegation that the venirewoman was the sole black juror in this case is not reflected on the record and was not raised in the trial court. There being no miscarriage of justice or manifest injustice appellant's second point is ruled against him.

Appellant's third point contends that the trial court erred in overruling its objection and in refusing to grant a mistrial when the prosecutor implied in her closing argument that appellant had intended to use the weapon to harm the officer. This point is ruled against him.

Missouri case law notes that the trial court has wide discretion in controlling the scope of counsel's closing arguments. *State v. Phelps,* 478 S.W.2d 304, 308 (Mo. 1972). The trial court's wide discretion extends to the granting of a mistrial based on improper closing argument. *State v. Tate,* 468 S.W.2d 646, 650 (Mo.1971). For this court to grant a reversal, the statements must be plainly unwarranted and clearly injurious. *State v. Hoskins,* 569 S.W.2d 235, 236 (Mo.App.1978).

In the instant case, the closing argument of the prosecuting attorney did not go beyond the bounds of the general rule as set forth in *State v. Hodges,* 586 S.W.2d 420, 422 (Mo.App.1979), which prohibits argument that excites, inflames or appeals to the prejudice of the jury. The argument here, did not imply in any way that the appellant intended to use the revolver on the police officer. The argument of the prosecutor was explanatory of the purpose of and need for the concealed weapons statute, and demonstrative of the vulnerability of others to persons carrying such weapons. The prosecution made no direct or personal references to the appellant, nor did the argument go beyond the evidence or the law nor was it inflammatory. The trial court thus did not abuse its discretion in refusing to sustain appellant's objection to the closing argument.

The judgment of the trial court is affirmed.

All concur.