Norman **STUMES**, Appellant,

v.

Herman **SOLEM**, Appellee.

No. 81–1589.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1984.

Decided Jan. 8, 1985.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ARNOLD, Circuit Judge.

This case comes to this Court on remand from the United States Supreme Court. *Solem v. Stumes*, —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). In our earlier decision, 671 F.2d 1150 (1982), we applied the per se rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), to exclude confessions that Stumes made without the presence of counsel after he had invoked his right to counsel. The Supreme Court reversed, holding that the per se rule of *Edwards* is not retroactive and should not have been applied to bar the admission of Stumes's confessions. Accordingly, the Court remanded for us to evaluate the admissibility of the confessions under its pre-*Edwards* decisions and those of this Circuit. 104 S.Ct. at 1346. Having done so, we now affirm the District Court's denial of the petition for habeas corpus.

I.

The facts of this case were fully stated in our previous decision and will only be summarized here. In September 1973, the police in Sioux Falls, South Dakota, suspected that Norman Stumes was responsible for the death of Joyce Hoff. After receiving word that Stumes had been arrested on September 27 in Green Bay, Wisconsin, on charges of perjury and check fraud, three Sioux Falls police officers (Skadsen, Green, and Hendrick) went to Green Bay to bring Stumes back. At this time, Stumes had not yet been charged with Hoff's death. On September 28, Stumes called his lawyer from the Green Bay jail. His lawyer instructed him not to make any statements before returning to South Dakota.

About 10:00 on the morning of October 1, Green questioned Stumes at the Green Bay Police Department. After being read his *Miranda* rights, Stumes stated that he understood them and did not object to speaking with the police without an attorney present. At the end of the hour-and-a-half questioning session, Green asked Stumes if he would submit to a polygraph test on the Hoff case. Stumes replied that "that is a question I'd rather not answer until I talk to [my attorney]." Questioning then stopped, but the officers told Stumes that they would return later that afternoon for further questioning.

About 4:30 that afternoon, Skadsen recommenced questioning without giving Stumes new *Miranda* warnings. Stumes admitted he had been in Hoff's apartment the night of the killing and that he had had intercourse with Hoff, but he denied having anything to do with her death. Green asked Stumes whether Hoff's death was intentional or accidental, and Stumes responded that it was accidental. Stumes then stated, "I would rather not talk about it any more at this time until I talk to my attorney, and after that I'll give you a full statement in regards to her death." Following this remark, at about 5:00, the questioning ended.

The following morning, the three officers and Stumes left Green Bay by car on the trip back to Sioux Falls. At the beginning of the trip Stumes was given his *Miranda* rights again and was asked if he was will-

ing to talk. He shrugged and nodded affirmatively. He was questioned intermittently about the Hoff murder. Late in the afternoon, after a 10-to-15 minute silence, Stumes had what he called "a little conflict with my emotions" and stated "that I couldn't understand why anyone would want to kill Joyce and that the taking of a human life is so useless." Green told him he would feel better if he "got it off his chest." Stumes then recounted strangling Hoff after she told him that she would tell Stumes's girlfriend that she and Stumes had slept together. After this confession, Green asked if Stumes would give a statement when he reached Sioux Falls, and pointed out to Stumes that his attorney would advise against giving such a statement. Stumes replied, "I don't give a damn what [my attorney] says. I'm doing anything I feel like, and I'll talk to anybody I want to."

After arriving at the Sioux Falls jail about 6:45 that evening, Stumes was put into a cell. Shortly afterwards he called Officer Skadsen to the cell. He was sobbing and placed his head on Skadsen's shoulder, and asked Skadsen to "tell them that I didn't mean to kill her—that I'm not a vicious killer."

Stumes was charged with murder. After a hearing on a motion to suppress Stumes's confessions, the trial court denied the motion. A jury convicted Stumes of first-degree manslaughter, and sentenced him to life imprisonment. On direct appeal, the State Supreme Court remanded for a determination of whether Stumes's statements had been voluntary. *State v. Stumes*, 90 S.D. 382, 241 N.W.2d 587 (1976). The trial court found they had. Stumes then filed this petition for a writ of habeas corpus in the United States District Court for the District of South Dakota, which the Dis-

trict Court [1] denied. *Stumes v. Solem*, 511 F.Supp. 1312 (D.S.D.1981).

■ On appeal from the District Court's denial of habeas relief, Stumes argues that the state trial court violated his Fifth Amendment right against self-incrimination in failing to suppress the statements he made.[2] For purposes of analyzing the admissibility of these statements, we shall divide them into four groups: the first interview (the statements made on the morning of October 1, which all parties agree were not incriminatory); the second interview (the statements made on the afternoon of October 1), the third interview (the statements made during the car trip to Sioux Falls on October 2); and the fourth interview (the statements in the Sioux Falls jail on October 2).

## II.

### A. The Second Interview

The District Court held that the statements made during the second interview were inadmissible because they were made without *Miranda* warnings. 511 F.Supp. at 1323. However, the court found that the admission of these statements was harmless error because other evidence proved Stumes's guilt beyond a reasonable doubt. *Id.* On appeal, Stumes urges that the District Court erred in finding that the admission of the second interview was harmless error. The State denies this claim and further argues as an alternative ground for affirmance that the District Court erred in holding the second interview inadmissible. It claims that the second interview was admissible despite the absence of *Miranda* warnings because Stumes voluntarily and knowingly waived his Fifth Amendment rights to remain silent and to have a lawyer present.

---

1. The Hon. Fred J. Nichol, Senior United States District Judge for the District of South Dakota.

2. Stumes also argues that the admission of these statements violated his Sixth Amendment right to counsel. The District Court rejected this argument on the ground that Stumes's right to counsel had not yet attached because no formal

charges or indictment had been issued before the statements were made. We agree. See *Brewer v. Williams*, 430 U.S. 387, 398–99, 97 S.Ct. 1232, 1239–40, 51 L.Ed.2d 424 (1977); *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

■ The determination whether an accused has knowingly and voluntarily waived his *Miranda* rights depends on all the facts of each particular case. *Fare v. Michael C.*, 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197 (1979). These circumstances include the background, experience, and conduct of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.2d 1461 (1938). Here the District Court concluded that Stumes had not voluntarily and knowingly waived his rights during the second interview because he was not given fresh *Miranda* warnings before the interview. Two considerations arguably support this conclusion: first, the second interview came nearly five hours after the first interview and nearly six-and-a-half hours after *Miranda* rights had been given; second, Stumes invoked his right to counsel in refusing to decide whether to take a polygraph exam.

■ The State argues that under the totality of the circumstances the time lag and the request for counsel as to the taking of a polygraph test did not invalidate Stumes's initial waiver. Although this is a close question, we agree and hold that the State has met its heavy burden of showing that Stumes voluntarily and knowingly waived his rights during the second interview. See *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966).

The nearly five-hour break between the interviews does not of itself invalidate the initial waiver. The significance of this elapsed time must be assessed in view of Stumes's knowledge and conduct and other relevant circumstances. As his testimony in the state court clearly reflects, Stumes is an intelligent and articulate adult. At the time of the second interview, he had already twice received his *Miranda* warnings (on the day he was arrested and at the beginning of the first interview), and in addition was familiar with criminal procedures from past involvement with the criminal-justice system. On the day after his arrest, three days before the second interview, he discussed his rights with his attorney, who advised him not to talk to the police. Despite this advice, Stumes voluntarily agreed to talk to the police and expressly waived his *Miranda* rights on the morning of October 1.

In addition, Stumes's conduct both before and during the second interview indicates that he was fully aware of his rights. At the conclusion of the first interview, Stumes refused to decide whether to take a polygraph test without first talking to his lawyer. The police then ceased questioning and apparently did not raise this issue again at a later interview. In both the first and second interviews Stumes indicated his knowledge of his right to remain silent by selectively choosing which questions to answer. Further, in asserting his right to counsel at the end of the second interview, after he had stated that Hoff's death was accidental, Stumes again demonstrated that he was aware of his right to counsel and his right to remain silent.

■ Stumes's refusal to agree to a polygraph test without first talking to his counsel also does not warrant a finding that he failed to voluntarily and knowingly waive his *Miranda* rights. His refusal was not itself a general invocation of his right to remain silent or to the presence of counsel but applied only to the particular question asked.[3] While a general request

3. Although Stumes testified at the state suppression hearing that he made a general request for counsel, no court, state or federal, has so found. The state circuit court did not enter any findings directly on this point but found that "At one point while they were talking the Defendant stated he did not wish to continue the conversation. Immediately, Detective Green ceased this discussion, but told the Defendant he would see him later that afternoon." *State v. Stumes*, Cr. 74–11, slip op. at 2 (Cir.Ct. Union County, S.D., Oct. 18, 1976).

Under 28 U.S.C. § 2254(d), factual findings of state courts are rebuttably presumed to be correct. Although the District Court held that the presumption of correctness did not apply because material facts were not adequately developed at the state court hearing, we construe the District Court's holding to apply only to those material facts on which new evidence was intro-

for counsel indicates an unwillingness to submit to any further questioning, a request for counsel only as to one question does not itself indicate such an unwillingness. Further, other factors indicate the voluntariness of Stumes's statements. Approximately six-and-a-half hours before the second interview Stumes had indicated he was willing to answer the officers' questions. Stumes also evinced a cooperative attitude from the very start of the first interview when he consented to the search of his car and apartment and waived extradition proceedings for his return to South Dakota. When Stumes was told that questioning would be resumed later that afternoon, he in no way indicated his unwillingness to submit to further questioning, though he was aware of his right to do so.

In deciding whether Stumes voluntarily and knowingly waived his rights during the second interview, we also consider whether the police "scrupulously honored" his right to counsel, which he had asserted in a limited way at the end of the first interview. In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Court seems to have held that statements made subsequent to the exercise of the right to remain silent are admissible only if the police "scrupulously honored" the defendant's right to silence.[4] If they have not done so, subsequent waivers of rights are apparently not considered effective.

In determining whether the police "scrupulously honored" Mosley's right to remain silent, the Court considered the following factors:

> [T]he police ... immediately ceased the interrogation [after Mosley invoked his right to counsel], resumed questioning only after the passage of a significant period of time [about two hours] and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.

*Id.* at 106, 96 S.Ct. at 327.

Here the police ceased questioning after Stumes refused to answer the polygraph question and apparently did not resume this line of inquiry in the second interview, held about five hours after the first interview terminated. The only significant element missing in this case which was present in *Mosley* is that Stumes was not reissued *Miranda* warnings. We do not believe this difference is decisive under the peculiar facts of this case. First, Stumes, unlike *Mosley*, made only a qualified assertion of his rights, limited to one question. As noted above this does not indicate the same degree of unwillingness as a general exercise of the right to silence or counsel. Second, for the reasons stated above, we believe that Stumes was aware of his *Miranda* rights and voluntarily chose not to exercise them. To require the police to reissue *Miranda* rights under these circumstances would serve no real purpose. If Stumes had thought that the police would ignore his rights even if he asserted them, it is hardly likely that the mere reiteration of the rights would have disabused him of that idea.

In summary, we find that the police "scrupulously honored" Stumes's request for counsel and that Stumes was aware of his *Miranda* rights and voluntarily decided not to exercise them when he spoke to the police during the second interview.

---

duced. Since no new evidence was introduced as to the substance of the interviews, and the District Court in fact ruled that such evidence was inadmissible, the factual findings of the state courts as to the statements Stumes made to the police are presumed to be correct.

**4.** *Mosley* involved the right to remain silent rather than the right to counsel. Indeed, two footnotes in *Mosley* suggest that the right to counsel should receive even greater protection than the right to remain silent. 423 U.S. at 101 n. 7, 104 n. 10, 96 S.Ct. at 325 n. 7, 326 n. 10.

While these footnotes also indicate that the right to counsel should be protected by a per se exclusionary rule, we have been instructed on remand to evaluate the admissibility of the statements under the weaker "totality of the circumstances" standard. *Solem v. Stumes*, 104 S.Ct. at 1343–44, 1346, and the Supreme Court has stated that "much of the logic and language of the [*Mosley*] opinion could be applied to the invocation of the ['right to counsel.']" *Id.* at 1344.

### B. The Third Interview

■ The District Court found that Stumes voluntarily and knowingly waived his rights as to the statements made in the car on the trip to Sioux Falls. Stumes argues that this conclusion is erroneous because the statements were made after Stumes had expressly invoked his right to counsel at the end of the second interview.

As to the third interview, we hold that Stumes was aware of his *Miranda* rights and voluntarily chose not to exercise them. The evidence detailed in our discussion of the second interview strongly indicates that Stumes was aware of his rights and chose not to assert them. Near the end of the third interview Stumes in fact stated that "I don't give a damn what [my attorney] says ... I'll talk to anybody I want to." Although this statement was made after he confessed to killing Hoff, it serves to confirm the inference that Stumes was acting voluntarily and with knowledge of his rights. Although Stumes argues that the confession he made in the car just before arriving in Sioux Falls was involuntary because the police had not given him *Miranda* warnings since about 9:00 that morning, we reject this argument for essentially the same reasons that we concluded that new *Miranda* warnings were not necessary at the second interview.

We also believe that the police "scrupulously honored" Stumes's right to counsel. All but the last of the factors the Supreme Court found decisive in *Mosley* are present here. The police immediately ceased the interrogation after Stumes invoked his right to counsel. The interrogation did not resume until about sixteen hours later the next day. This break in the questioning was nearly fourteen hours longer than the two-hour break that·the Supreme Court considered to be a "significant period" in *Mosley.*[5] During this sixteen-hour period, Stumes was able to reconsider his decision free of the pressure and influence of the questioning officials. Also, like Mosley, Stumes was given fresh *Miranda* warnings when questioning was resumed.

Stumes's situation at the time of the third interview differs in one important respect from Mosley's. Stumes was questioned by the police about the same crime as in the earlier interview, whereas Mosley was questioned about a different crime that was not the subject of earlier questioning. However, as we have held on two prior occasions, this difference is not decisive. *Jackson v. Wyrick,* 730 F.2d 1177, 1180 (8th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 167, 83 L.Ed.2d 102; *United States v. Finch,* 557 F.2d 1234, 1236 (8th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285. Questioning about the same crime does not of itself prove bad faith or undue pressure on the part of the police, especially where, as here, there is a substantial period between interviews and the police immediately terminated the prior interview when the defendant invoked his right to counsel. The defendant must show something more than simply that he was questioned again about the same crime. He might, for example, show that the police attempted to induce him to give up his right to counsel or to remain silent. See *Jackson, supra,* 730 F.2d at 1180. But here the defendant has not presented evidence that would warrant such a finding of bad faith or misconduct.

### C. The Fourth Interview

■ On the evening following the car trip, Stumes requested to see Officer Skadsen and asked Skadsen to "tell them that I didn't mean to kill her—that I'm not a

---

5. Our court has previously upheld the admission of statements obtained after substantially equivalent periods between the defendant's exercise of his right to silence and subsequent interrogation: *United States v. Finch,* 557 F.2d 1234, 1236 (8th Cir.1977), *cert. denied,* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (statements made about twenty hours after right invoked); *Jackson v. Wyrick,* 730 F.2d 1177, 1180 (8th Cir.1984) (statements made about twenty-four hours after right invoked). In *Westover v. United States,* 384 U.S. 436, 496–97, 86 S.Ct. 1602, 1639–40, 16 L.Ed.2d 694 (1966), a statement made after being given *Miranda* warnings was excluded, but there the defendant had just been subjected to intense and prolonged interrogation without any warnings at all. See *Mosley,* 423 U.S. at 107, 96 S.Ct. at 328.

vicious killer." Because Stumes made this statement on his own initiative without questioning or prompting from the police, the safeguards of *Miranda* do not apply. Further, since we have found that Stumes's prior statements were properly admitted into evidence, the argument that the "vicious killer" statement was the fruit of prior illegal interrogation is unavailable.

### III.

The judgment of the District Court denying the writ of habeas corpus is affirmed.