**STATE of Missouri, Respondent,**

v.

**Ivan Doyle HORNBECK, Appellant.**

**No. 48926.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 28, 1985.

Motion for Rehearing and/or Transfer
Denied Aug. 28, 1985.

Case Transferred to Supreme Court
Oct. 16, 1985.

Case Retransferred to Court of Appeals,
Jan. 22, 1986.

Original Opinion Reinstated
Jan. 29, 1986.

---

Claude Hanks, St. Louis, for appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Ivan Doyle Hornbeck, appeals from his conviction, after a jury trial,

for tampering with a witness. § 575.270 RSMo (Supp.1984). He was sentenced as a prior and persistent offender to five years' imprisonment.

Defendant claims on appeal the court erred (1) in admitting statements he made to police during a custodial interrogation after indicating his desire to remain silent, and (2) in overruling defense counsel's objection to a remark by the prosecutor during closing argument. We reverse and remand.

Because defendant does not challenge the sufficiency of the evidence, we briefly review evidence viewed in the light most favorable to the verdict. Defendant telephoned Myra Adams at a bar where she worked and threatened to kill her if she testified in the murder trial of his brother Jerry Hornbeck. Defendant made another call to the bar, and this time an off-duty police officer at the bar heard defendant make threats against Adams and the officer. The officer and Adams were able to identify defendant's voice as the voice on the telephone.

In addition to this evidence were statements made by defendant to investigating police officers. These statements indicated defendant was involved in a plan to prevent witnesses from testifying, and that he had gone to the bar to talk to Myra Adams about the case. Defendant denied making any phone calls.

Defendant first contends certain statements he made to police should not have been admitted into evidence because they were made after he had indicated he wanted to remain silent.

Defendant was brought to the police station for questioning in connection with the threatening phone calls. The officers advised him of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) before the questioning began. Defendant answered questions after being advised of his rights but then became visibly upset, nervous and angry. The officers, Detectives Joseph Brauer and Michael Nichols, ceased their questioning

but continued working on their report of the incident, getting information from the defendant such as his height, weight, age, date of birth and Social Security number. While this descriptive information was being gathered, defendant initiated a conversation with the officers saying he had not made a threat but had just conveyed a message from his brother. One of the officers asked if defendant wanted to put his statements into writing, and defendant indicated he did. Defendant was then read his *Miranda* rights again and signed a form waiving those rights.

Defendant then wrote out a statement but made no mention of the phone calls. When the officers suggested he might want to mention the calls in the statement, defendant said he did not want to write anything more on paper and did not want to make any statement about the phone calls. He appeared upset at this point, and the officers ceased questioning and returned to their reports.

After a few minutes passed, defendant initiated a new conversation with the officers. Detective Nichols testified defendant volunteered a statement about a friend of his brother's who was "going to take care of some people." Detective Nichols asked for details. In answer to the officer's subsequent questions, defendant described how he had gone to a bus station to pick up Donald Stanley, described by defendant as a "hit man" who was going to take care of some witnesses. Detective Brauer's testimony corroborated the fact defendant had initiated this conversation which led to information about the hit man.

Defendant claims error in admission of his statements about the hit man. Defendant relies on a statement from *Miranda* to support his allegation. "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473–74, 86 S.Ct. at 1627–28. We look first at whether defendant here indicated he wished to remain silent.

Defendant's point focuses on the time after he had for the second time been read his *Miranda* rights. He had signed a waiver form and had written a statement. Detective Brauer testified that when it was suggested defendant mention in the written statement something about the phone calls, defendant became extremely upset and said he was "not going to write anything more on paper." Detective Nichols testified that defendant, when asked to make a statement about the phone calls said, "Hell no. I ain't making no statement about no telephone calls. I ain't stupid. I've been in the penitentiary before."

Neither one of these statements invoked defendant's right to remain silent. "The mere fact that he declined to make a ... written statement while continuing to talk and give oral statements to the police is not a violation of *Miranda*." *State v. Crespo*, 664 S.W.2d 548, 551 (Mo.App.1983). Defendant's remark that he did not want to make a statement about the phone calls would not preclude questioning about other issues. *See Stumes v. Solem*, 752 F.2d 317, 320–21 (8th Cir.1985). He was advised of his *Miranda* rights twice, signed a waiver of those rights, and *initiated* the complained of conversation. *State v. Rogers*, 686 S.W.2d 472, 477 (Mo.App.1984).

The fact that defendant became upset, nervous and angry during interrogation is not a significant factor affecting the admissibility of his statement. Rather, these reactions are the normal reactions of an accused when confronted with his crime. Finally, the interruption that occurred in the questioning does not require the exclusion of the statement. *State v. Groves*, 646 S.W.2d 82, 85 (Mo. banc 1983). Defendant's first point is denied.

Defendant's second point claims error in a statement by the prosecutor in closing argument:

[Prosecutor]: Jerry Hornbeck and his lawyer knew as of September 7th, 1983, that Myra Adams was a State witness and on September 17th they took mea-

sures to make sure Myra Adams would not be on the witness stand.[1]

[Defense counsel]: Just a minute, I'm going to object to that. He's impugning my reputation and my character by saying, "They."[2]

[The Court]: The objection is overruled. The jury understands this is final argument.

[Prosecutor]: And it worked. It worked.

■ It is clearly improper for the State to argue matters not in evidence. *State v. Cannady*, 660 S.W.2d 33, 39 (Mo.App. 1983). Here there was no evidence the attorney "took measures to make sure Myra would not be on the witness stand."

■ In *State v. Spencer*, 307 S.W.2d 440, 446–47 (Mo.1957), the prosecutor alleged in closing argument that defendant would have the thought, " 'I can employ a good attorney, someone who can make a fine argument and make a cross-examination and browbeat the witnesses—.' " The trial court overruled an objection to the remark. The supreme court found nothing in the evidence to show improper conduct by defense counsel toward any witness. The court held: "The remark of the prosecuting attorney, coupled with the ruling of the court, clearly conveyed the idea that defendant's counsel had acted improperly during the trial, and it tended to degrade the defense. The comment was highly improper, and it was error to overrule the objection." *Id.*

The condemned argument in *Spencer* is mild compared to the prosecutor's remarks in the present case. The State concedes that the remarks "may not have been of an exemplary nature." While tacitly acknowl-

edging the error, the State has understated the prejudicial effect of the argument.

A criminal trial is, and should be, an adversary proceeding. Remarks are made in the heat of closing argument that, on reflection, would best be left unsaid. Sometimes trial counsel will accuse his opponent of misconduct and in effect "try the other lawyer." This should not be done, but within limits, such improprieties do not necessarily require a reversal.

In this case the argument of the prosecuting attorney goes far beyond the wide latitude accorded counsel during argument. Defense counsel stood accused of conspiring to commit a crime. In other words, a criminal was defending a criminal. This allegation was made without a scintilla of evidence to support it. By failing to sustain defense counsel's objection and by failing, *sua sponte*, to admonish the prosecuting attorney for his improper argument, the trial court permitted the jury to speculate on defense counsel's complicity in the crime charged. It degraded defense counsel and destroyed the basic precept that both the State and the defendant are entitled to a fair trial. It is so alien to any reasonable concept of justice that a reversal of defendant's conviction is mandated.

The conviction of the defendant is reversed and the case is remanded for a new trial.

CRIST, J., concurs.

DOWD, P.J., dissents in separate opinion.

DOWD, Presiding Judge, dissenting.

The majority concludes that the prosecutor's statement during closing argument

---

1. We note that the remarks were not accidental. The prosecutor, during trial, attempted to lay the groundwork for making the complained of statement. The prosecutor asked a witness if Jerry Hornbeck's counsel knew, prior to the time the phone calls took place, that Myra Adams would be a witness. The witness responded affirmatively.

2. The State in its brief acknowledges that defendant's attorney also served as counsel for Jerry Hornbeck. Since the file in the case of Jerry Hornbeck was admitted into evidence in this case and the file was sent to the jury room, we assume the jury would have learned defense counsel here was the same as counsel for Jerry Hornbeck, even if defense counsel had not indicated this by his objection that "He's impugning *my* reputation and *my* character." (Emphasis added.)

concerning defense counsel constitutes reversible error. I respectfully dissent.

The majority's holding rests on the legal theory that it is improper for the prosecutor to argue matters not in evidence. *State v. Cannady,* 660 S.W.2d 33, 39 (Mo. App.1983). However, the defense counsel did not assert that theory in his objection at trial nor in the motion for a new trial. Therefore, the objection has not been properly preserved for appellate review. *State v. Reed,* 629 S.W.2d 424, 429 (Mo.App. 1981).

Nonetheless, defense counsel did object to the statement on the grounds that it impugned his reputation and character. A conviction will be reversed for improper argument only if it is established that the complained of comments had a decisive effect on the jury's determination. *State v. Webster,* 659 S.W.2d 286, 289 (Mo.App. 1983). The court should consider the entire record to determine whether the error was sufficiently prejudicial to have tipped the scales and thereby denied defendant a fair trial. *State v. Reed,* 629 S.W.2d 424, 428 (Mo.App.1981); *United States v. LeFevre,* 483 F.2d 477 (3rd Cir.1973). For the court to grant reversal, statements in closing argument must be plainly unwarranted and clearly injurious. *State v. Ofield,* 651 S.W.2d 190, 194 (Mo.App.1983). Convictions are not generally reversed because of improper comment in closing argument. This is especially true where there is strong evidence of defendant's guilt. *State v. Degraffenreid,* 477 S.W.2d 57, 65(15) (Mo. banc 1972). Here the victim and a police officer heard and identified the voice of the defendant when he telephoned the victim and threatened to kill her if she testified in the murder trial of the defendant's brother. Furthermore, the defendant stated to police officers that he was going to a bus station to pick up Donald Stanley who was a "hitman" who was "going to take care of some people." The record thus demonstrates that the evidence of defendant's guilt is strong and the error is harmless. *State v. Degraffenreid, supra,* p. 65.

Another case the majority relies upon is *State v. Spencer,* 307 S.W.2d 440 (Mo. 1957). The aggrieved comment in that case was by the prosecutor in closing argument to the effect that the defendant would have the thought, " 'I can employ a good attorney, someone who can make a fine argument and make a cross-examination and browbeat the witness....' " Firstly, this statement is an attack directly upon the defendant and not his attorney thus making it more prejudicial. Secondly, in *Spencer* there was another important assignment of error on which the court also based its reversal. *Spencer* does not stand for the position that the above comment on closing argument alone will warrant reversal. The majority fails to consider the record as a whole to determine if the defendant received a fair trial. *State v. Reed, supra.* See *State v. Renfro,* 408 S.W.2d 57, 60(2) (Mo.1966) where a *single* improper comment on closing argument was not found to rise to the level which necessitates the granting of a mistrial.

The statement in question alleged that defense counsel conspired with the defendant to tamper with the witness, Myra Adams. While the statement was improper, it could not by itself be said to have had a decisive effect on the jury's determination. The statement attacks the attorney and not the defendant. Viewing the record as a whole, I find that the defendant was not denied a fair trial. The conviction should be affirmed.