STATE of Missouri,
Plaintiff/Respondent,

v.

Alvernon McGEE, Defendant/Appellant.

Alvernon McGEE, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60164, 61856.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 2, 1993.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 24, 1993.

Marcie W. Bower, Office of the State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Michael J. Runzi, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals his conviction by a jury of involuntary manslaughter, § 565.-024.1(1), RSMo 1986, and armed criminal action, § 571.015, RSMo 1986. He was sentenced by the court as a persistent offender, § 558.016, RSMo Supp.1990, to two concurrent terms of three years' imprisonment. After sentencing, defendant filed a

Rule 29.15 motion which the motion court denied without an evidentiary hearing. These appeals have been consolidated for review pursuant to Rule 29.15(*l* ). We affirm the judgments.[1]

The evidence reveals that in the late evening hours of September 13, 1989, victim and Jeffrey Griffin attended a party approximately four or five blocks from the A & A Liquor Store, located on Martin Luther King Drive in Kinloch, Missouri. At approximately 12:30 to 1:00 a.m. on September 14, victim and Griffin left the party and proceeded to the liquor store, which was owned by the defendant. While Griffin acted as "lookout", victim climbed up the bars on the drive-thru window of the store and onto the roof. While victim was in the process of burglarizing the store, defendant slowly drove up with his car lights turned off. Defendant stopped his car in front of the driveway of the drive-thru portion of the liquor store. Defendant then got out of his car, opened the trunk and retrieved a rifle. At this time, Griffin was hiding behind a tree and defendant was standing between the tree and victim, who was on the roof. After he retrieved his rifle, defendant began shooting up toward the roof. Griffin stated that he heard victim screaming, "I'm hit," after defendant told him to "come on down, come on out of there". After defendant entered an adjacent building, Griffin ran back to the party and told victim's brothers that he had been shot.

When defendant arrived at the liquor store, he was accompanied by his girlfriend, Wilma Davison. At defendant's direction, Davison called the police. Officer Walter Wilson of the Kinloch Police Department subsequently received a radio call stating that burglars were inside the A & A Liquor Store building. Officer Wilson arrived at the scene and found defendant in the middle of the street holding a rifle. Officer Wilson had known defendant for approximately fourteen years and knew that defendant had previously served as a police officer in Kinloch. Officer Wilson told defendant to put his rifle away and defendant complied.

After calling the fire department for a ladder, Officer Wilson climbed onto the roof of the liquor store and found victim crouched over a window. Wilson told victim to get up and informed him that he was under arrest. When victim made no reply or movement, Wilson approached him, raised him up by his right shoulder, and noticed that he was bleeding. Wilson then asked defendant whether he had fired up on the roof. Defendant replied "yes". Wilson called for an ambulance, but victim was dead when it arrived.

Defendant testified in his own defense, stating that he saw two people on the roof and that shots had been fired at him. Ms. Davison also testified that there were two men on the roof and that she heard shots fired from the roof.

■ In his sole point on appeal, defendant claims that "[t]he trial court abused its discretion in failing to declare a mistrial, *sua sponte*, ... in that the prosecutor argued matters to the jury [during closing argument] which the record indicates were false, and he degraded defense counsel." No objection was made to these statements at trial, and these allegations of error were not raised in defendant's motion for a new trial. However, defendant now seeks review under the plain error standard of Rule 30.20.

■ Plain error affecting substantial rights may be considered on appeal although not properly preserved for review, but only where there is a strong and clear showing that manifest injustice or a miscarriage of justice will result if relief is not given. *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986). Relief should rarely be granted on assertion of plain error to matters contained in closing argument, because trial strategy looms as an important consideration and, in the absence of the specific request for relief, the trial court's options are narrowed to uninvited interfer-

---

1. Defendant has not briefed the allegations of error contained in his Rule 29.15 motion. We thus consider them to have been abandoned.

Rule 84.13(c); *State v. Gaines,* 807 S.W.2d 678 (Mo.App.1991).

ences with summation and a corresponding increase of error by such intervention. *Id.; State v. Simms*, 810 S.W.2d 577, 580–81 (Mo.App.1991). "Such claims of plain error in closing argument will not justify relief unless they are determined to have a decisive effect on the jury." *State v. Jamerson*, 809 S.W.2d 726, 730 (Mo.App.1991).

Following the presentation of the State's evidence, but before closing arguments, the following colloquy took place at a side bar conference:

> [PROSECUTOR]: I do apologize for this, Judge. It was an oversight. I realize that [defense counsel]'s request for discovery requested prior convictions of all the State's witnesses that are going to testify. And you normally don't think of police officers having prior convictions. But I do remember in an earlier case which I had Chief Patton as a witness I did find out he had two prior pleas to driving while intoxicated, a plea to possession of a weapon while intoxicated and a plea to driving while revoked or driving while suspended.
>
> [DEFENSE COUNSEL]: I'm going to say candidly I was aware of Chief Patton's difficulties and I chose not to ask him specific questions in that regard.

Subsequently, in closing argument, the prosecutor made the following statement to the jury: "Every witness that testifies can be impeached with prior convictions or pleas of guilty to criminal offenses. The only witness all three days that you've heard form [sic] that has any criminal convictions or pleas is [defendant]."

The prosecutor's misstatement was improper, and a timely and proper objection should have been sustained and an admonishment given to the prosecutor. However, the record indicates defense counsel was fully aware of the witness' prior convictions and had chosen not to question him regarding them when presented with the opportunity during cross-examination. Defense counsel's subsequent failure to object to prosecutor's argument during closing may properly be considered a matter of

trial strategy. "A party cannot fail to request relief, gamble on the verdict, and then if adverse, request relief for the first time." *State v. Dickerson*, 646 S.W.2d 884, 885 (Mo.App.1983). The trial court's failure to grant a mistrial *sua sponte* following these remarks was not plain error.

■ Defendant also contends that the prosecutor made an improper personal attack on defense counsel. The prosecutor made the following statement during closing argument:

> And when [defense counsel] told you about that blue Chevrolet, he said to be honest with you I think that was Griffin's car. Does that mean that [defense counsel] was not honest with you throughout the rest of his argument? Why would he say to be honest with you then?

This comment was evidently made in reference to the following statement by defense counsel during his closing argument:

> How close has [the prosecutor] come to meeting his burden of proof of meeting something beyond a reasonable doubt? Truth is Griffin went back up there to make sure that his car was removed. I think it was a blue Chevrolet.

■ Defendant asserts that prosecutor's argument constituted an unwarranted personal attack on defense counsel. It is clear that personal attacks on defense counsel by a prosecutor are improper and objectionable. "Nonetheless, we have not adopted a *per se* rule of mandatory reversal in all cases in which objectionable comments are made by a prosecutor." *State v. Roberts*, 838 S.W.2d 126, 131 (Mo.App.1992).

Defendant principally relies on the cases of *State v. Hornbeck*, 702 S.W.2d 90 (Mo. App.1985), and *State v. Greene*, 820 S.W.2d 345 (Mo.App.1991), to support his contention that the prosecutor's improper argument requires a reversal in this case. However, the egregiousness of the prosecutorial impropriety in the case at bar does not rise to the level confronted by the *Greene* and *Hornbeck* courts.[2] The prose-

---

2. We further note that because timely and proper objection was made to the improper argu-

ment in both the *Greene* and *Hornbeck* cases,

cutor in *Greene* expressly called defense counsel a liar in front of the jury. The trial judge sustained defense counsel's objection barring further argument but refused to instruct the jury to disregard the prosecutor's statement. *Greene*, 820 S.W.2d at 346–347. In *Hornbeck*, we reversed the conviction of a defendant where the trial court had allowed, over objection, the prosecutor to accuse defense counsel of conspiring to prevent a witness' testimony. While we found reversal necessary under those facts, we noted:

> A criminal trial is, and should be, an adversary proceeding. Remarks are made in the heat of closing argument that, on reflection, would best be left unsaid. Sometimes trial counsel will accuse his opponent of misconduct and in effect "try the other lawyer." This should not be done, but within limits, such improprieties do not necessarily require reversal.

*Hornbeck*, 702 S.W.2d at 93.

Here, the prosecutor's remark, although improper, does not rise to the level warranting reversal. "[B]rief, isolated, non-repetitive remarks of state counsel in closing remarks rarely call for plain error relief." *State v. Higgins*, 619 S.W.2d 94, 96 (Mo.App.1981). We do not find that the State's improper arguments could have possibly had a decisive effect on the jury. Accordingly, we find no basis for concluding that these challenged remarks demonstrated a strong and clear showing that injustice or a miscarriage of justice resulted to warrant the granting of a mistrial *sua sponte*. Defendant's point is denied.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.